### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DEVIN G. NUNES,

    PLAINTIFF,

v.

CABLE NEWS NETWORK, INC.
and JAKE TAPPER

    DEFENDANTS.

_____/

Case No. 8:22-CV-02659-SCB-AEP

MOTION OF DEFENDANT CABLE NEWS NETWORK, INC. TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(3) & 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(3) and 12(b)(6), Defendant Cable News Network, Inc. ("CNN") moves to dismiss with prejudice Plaintiff Devin Nunes' Complaint (Dkt. 1) for improper venue and failure to state a claim.

### PRELIMINARY STATEMENT

In the early morning hours of October 28, 2022, Paul Pelosi, husband of then-Speaker of the House of Representatives Nancy Pelosi, was beaten over the head with a hammer by an intruder in their California home. The assailant was searching for Speaker Pelosi to interrogate her and intended to break her kneecaps if she "lied." While the attack drew condemnation from across the political spectrum, it also generated an outpouring of offensive comments on social media mocking the attack and insinuating that Pelosi was engaged in a sexual relationship with his attacker.

This lawsuit arises out of an October 31, 2022 segment of *CNN Tonight With Jake Tapper* (the "Segment"), in which Tapper used the "spreading [of] insane offensive

1

and false conspiracy theories" about Pelosi's attack as a jumping off point to call for more humane discourse surrounding tragic events.   Plaintiff Devin Nunes—a California citizen and former U.S. Congressman—was one of several individuals Tapper criticized for sharing abhorrent social media content concerning the attack. Plaintiff does not and cannot dispute that he shared posts mocking the attack, nor can he credibly allege that Tapper's commentary implies provably false facts about him. Instead, seeking to silence public criticism of his spreading material making light of the bludgeoning of an 82-year-old man, Plaintiff commenced this baseless defamation lawsuit.  The action should be dismissed for several independent reasons.

Initially, this Court should dismiss or transfer this action for improper venue. None of the events giving rise to the claim occurred in the Middle District of Florida; nor does Defendant Tapper reside in the District.  *See* 28 U.S.C. § 1391(c).  Together, these facts establish that Plaintiff cannot meet his burden of showing proper venue pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), the grounds Plaintiff relies on.  Indeed, Plaintiff affirmatively pleads that Tapper is a citizen of (and therefore resides in) the District of Columbia, vitiating any ability of Plaintiff to rely on Section 1391(b)(1). And none of the events—much less a substantial part of the events—giving rise to Plaintiff's claim occurred in Florida, rendering Plaintiff's reliance on Section 1391(b)(2) inapposite.  As venue does not lie in this District, the Court should either dismiss the complaint or transfer the case to the District of Columbia where venue lies.

Even were the Court to conclude that venue is proper in this District (it is not), the Court may still transfer venue for convenience of witnesses and parties.  Tapper

reported the Segment from CNN's D.C. studio and employees in CNN's D.C. and New York City bureaus produced the Segment. As such, most of the critical witnesses and documents are in D.C. or New York. None of the relevant witnesses, including Plaintiff himself, reside in Florida. Thus, the Court should transfer this action to D.C. for the convenience of the parties and witnesses, and in the interest of justice.

Independent of these venue infirmities, Plaintiff's defamation claim also fails on the merits. Plaintiff challenges five statements from the Segment, claiming they would be understood to mean that he "refused to condemn the violent attack on Paul Pelosi," that he "mocked or made fun of the attack," and that he "suggested that the encounter between Mr. Pelosi and [his attacker] was sexual in nature." Compl. ¶ 3. Plaintiff's claim fails for four independent reasons. *First*, one challenged statement is not of and concerning Nunes and not defamatory of anyone. *Second,* the remaining challenged statements are non-actionable opinion based on the disclosed and undisputed facts concerning Nunes' conduct on social media. Tapper's criticism of Nunes (and others) as having an "inhuman and inhumane response to a tragedy" when they "spread" or "trafficked" in these "insane," "offensive," and "deranged" "lies" and "conspiracy theories" following the Pelosi attack is textbook protected opinion. Moreover, the question raised by Tapper—"what is wrong with these people?"—is exactly the kind of rhetorical hyperbole protected under the First Amendment. *Third*, Plaintiff's claim does not gain traction when reframed as libel by implication. The "omission" he claims created a false implication—that he condemned the Pelosi attack *before* he chose to post the offensive memes—does not insulate him from criticism of that decision.

*Finally*, Plaintiff—who is unquestionably a public figure—fails to plausibly allege facts that, if true, could establish Defendants published the Segment with actual malice. For each of these independent reasons, Plaintiff's claim fails and this Court should dismiss this action with prejudice.

## STATEMENT OF FACTS[1]

### A.  The Parties

Plaintiff Devin Nunes is a former U.S. Congressman who resigned in 2021 to become the CEO of Truth Media & Technology Group Corp. ("TMTG"), which operates the social media platform Truth Social.  Compl. ¶ 8.  Plaintiff is a citizen of the state of California.  *Id.*  He is also a repeat defamation plaintiff, regularly suing media companies, with courts often dismissing his claims at the pleading stage.[2] Defendant CNN owns and operates numerous news platforms and services, including the CNN television network and the website www.cnn.com.  *Id.* ¶ 9.  Defendant Jake Tapper is an anchor and Chief Washington Correspondent for CNN.  *Id.* ¶ 10.  He hosts various CNN news programs and previously hosted an evening program entitled *CNN Tonight with Jake Tapper.*  Tapper is a resident of Washington, D.C.  *Id.*

---

[1] All facts are taken from the Complaint, and sources incorporated by reference or otherwise subject to judicial notice.  *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

[2] *See, e.g.*, *Nunes v. Meredith*, 2022 WL 2214205 (E.D. Cal. Jun. 21, 2022) (granting anti-SLAPP motion to strike complaint); *Nunes v. WP Co.*, 513 F. Supp. 3d 1 (D.D.C. 2020) (dismissing defamation action) *aff'd*, 2022 WL 997826 (D.C. Cir. Apr. 1, 2022); *Nunes v. Cable News Network, Inc.*, 31 F.4th 135 (2d Cir. 2022) (affirming dismissal of defamation action); *Nunes v. Twitter, Inc.*, 103 Va. Cir. 184 (2019) (dismissing defamation and negligence action); *Nunes v. Fusion GPS*, 531 F. Supp. 3d 993 (E.D. Va. 2021) (dismissing RICO action); *Nunes v. Twitter, Inc.*, CL 19000629-00 (Virginia Circuit Ct., Henrico Cty. Aug. 3, 2021) (dismissing defamation action).

###   B.   The Segment

On October 31, 2022, CNN aired the Segment in which Tapper provided commentary on the "spreading" and "traffic[king]" of "offensive and false conspiracy theories" following the violent attack on 82-year-old Paul Pelosi, husband of then-Speaker of the House Nancy Pelosi.   The Segment expressed Tapper's view that "offensive" responses to violent tragedies—regardless of the politics of the speaker—are "unequivocally wrong," but the Pelosi attacks were "in a way, an attempt, to not just downplay, but justify the violence."   Such "smears" and the "spreading of false conspiracy theories" contribute to the "public demonization of a person or a group that, results in the incitement of a violent act."   Ultimately, Tapper concluded that "in this moment, we all need to consider, how we talk about our fellow humans." *See* Declaration of Jeremy A. Chase ("Chase Decl."), Ex. 1, Ex. 2, at 1–5.

The Segment was nearly eleven-and-a-half minutes long.   Tapper began by noting the seriousness of the attack against Pelosi, which left him severely wounded and hospitalized after his alleged attacker, Paul DePape, broke into the Pelosi residence and beat Pelosi over the head with a hammer.   The criminal complaint filed against DePape revealed that "the suspect trafficked online in far-right conspiracy theories."   According to the complaint, DePape was looking for Nancy Pelosi and he said "he was going to hold Nancy hostage" and "[i]f Nancy … 'lied' he was going to break 'her kneecaps.'"   From the outset, Tapper's commentary underscored how the attack was inextricably tied to online conspiracy theories and misinformation.

Following this introduction, Tapper noted that "[s]everal prominent

Republicans have condemned the attack, including today, Donald Trump."   In addition to former President Trump's statement, Tapper quoted comments from House Republican Leader Kevin McCarthy, and Senate Minority Leader Mitch McConnell also denouncing the violence against Pelosi.  Tapper then contrasted those responses with others who, despite any condemnation, reacted to the attack by "spread[ing] insane, offensive, and false conspiracy theories, such as the complete and utter lie, the deranged smear that Paul Pelosi and the attacker . . . were in a sexual relationship."  By way of example, Tapper first identified Donald Trump Jr.'s social media comments mocking the attack, including posting an image on Twitter of a hammer and a pair of men's underwear with the caption "got my Paul Pelosi Halloween costume ready."  Commenting on Trump Jr.'s conduct, Tapper opined that "it's hard to fathom the kind of mind that hears of a tragedy, like what happened to 82-year-old Paul Pelosi, and decides to traffic in this filth."

Next, Tapper observed that "Trump Jr. [was] hardly alone" in trafficking in this filth.  Devin Nunes, a former Republican congressman who "now runs Trump's social media company" "shared this Halloween image" on Truth Social.  The Segment displayed Nunes' post full screen, which depicted a menacing figure wielding a hammer, along with Nunes' own commentary: "at least this guy has his clothes on." Chase Decl., Ex. 3. The post is clearly dated October 29, 2022, a day *after* Nunes alleges he "condemned the attack."  Compl. ¶ 6.  Next, "Nunes also reposted this meme, using a poster for the gay romantic comedy *Bros*, twisting it into a smear of

Paul Pelosi."[3]   Chase Decl., Ex. 3, 4.   Again, the post was shown in full screen for

viewers.   Both posts are reproduced below:

 

The movie poster was doctored to suggest that "when Nancy's out of town" a gay

romance ensued between Paul Pelosi "and the man who tried to bash Pelosi's head in

with a hammer.   Words fail!"   Tapper next cited the Twitter post from Republican

Congressman Clay Higgins that contained a photograph of Nancy Pelosi with the

caption: "[t]hat moment you realize the nudist hippie male prostitute LSD guy was

the reason your husband didn't make it to your fundraiser."   With these vivid and

repugnant examples, Tapper observed "what is wrong with these people?   There's

more.   But you get the point."

Tapper continued that "in addition [to these reactions] being an inhuman and

inhumane response to a tragedy, it's a lie, the federal affidavit released this afternoon

said that Pelosi did not know the suspect."   The Segment then included the televised

---

[3] The display indicates that Nunes "ReTruthed" the doctored poster, a term that is synonymous with "repost" or "retweet" on Twitter:  i.e., a user sharing another user's post via their own account.

statement from San Francisco Police Chief William Scott that "there's absolutely no evidence that Mr. Pelosi knew this man, as a matter of fact the evidence in this case indicates the exact opposite."  In short, there was no basis in fact for any suggestion that Pelosi was romantically involved with his attacker.

Tapper then acknowledged that "[s]adly" "after every tragedy, like this, we unfortunately see some awful reactions."  He provided instances of Democrats having "awful reactions" to tragedies, including when Congressman Steve Scalise was shot and when Senator Rand Paul was attacked by his neighbor, before noting that all of these comments were "unequivocally wrong."  But Tapper observed that "these smears about Paul Pelosi, they're not just evidence of partisanship blocking someone's ability to be human.  They're conspiratorial.  They're in a way an attempt to not just downplay but justify the violence.  They're part of the same sickness that got Paul Pelosi injured to begin with."

With this background, Tapper observed that U.S. citizens must be wary of "stochastic terrorism" which is "the public demonization of a person or group that results in the incitement of a violent act, even without express orders to attack that person or group."  As examples, Tapper cited how false allegations of a stolen election incited the January 6 insurrection at the U.S. Capitol; how conspiracy theories about a pedophilia ring in the basement of Comet Ping Pong in Washington, D.C. led a man from North Carolina to show up to the restaurant with a gun; how conspiracy theories about "The Great Replacement Theory" inspired the anti-Semitic shooting at the Tree of Life Synagogue in Pittsburgh, the anti-Latino attacks in El Paso, and the racist

Buffalo supermarket shooting.  The troubling result that can flow from spreading these false, conspiratorial claims, Tapper opined, is that "Paul Pelosi, to his attacker, was not a grandfather, or a father, or a husband, or a businessman.  He was an enemy!"  Tapper ultimately used all these events (and others) as a call for civility, and cautioned that "in this moment, we all need to consider how we talk about our fellow humans."  In short, the Segment was broad commentary on the need for civil discourse, not mocking attacks or false conspiracy theories, in the wake of a personal tragedy.

On Monday, November 7, 2022, CNN televised an update to the Segment (the "Update").[4]  Chase Decl., Ex. 5; Chase Decl., Ex. 6 at 12.  In the Update, Tapper explained that before the Segment aired on CNN, he reached out to Nunes, who "would not to comment on the record as to why he felt it was appropriate to spread those deranged memes."  Nunes instead directed Tapper to a prior interview he gave on Newsmax on October 28, 2022 (the "Newsmax Interview"), where Nunes stated with respect to the Pelosi attack:

> "No one should condone this violence.  But I want to take people back, as someone whose family has been attacked by these raging lunatics—where were the Democrats and Pelosi when people were outside my home with my young daughters in the home and my wife by themselves? . . . This is all stuff that the Democrats have continued to allow to happen . . . Now look, I am saying clearly, because the fake news will take this out of context, what they did to

---

[4] The Segment appears on CNN's website.  Beneath the video of the Segment, CNN describes the Segment itself and adds "Watch Jake's update here" with a hyperlink to the Update.  Plaintiff references the Segment as it was published on the CNN website in his Complaint.  *See* Compl. ¶ 1 (including a hyperlink to https://www.cnn.com/videos/politics/2022/11/01/jake-tapper-monologue-paul-pelosi-attack-right-wing-conspiracy-theories-tapperctn-vpx.cnn).  Accordingly, the Update is incorporated by reference in the Complaint and can be considered by this Court.  *See Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002), *aff'd on subsequent appeal*, 124 F. App'x 641 (11th Cir. 2004) (Table); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  The Newsmax Interview is likewise directly referenced in Plaintiff's Complaint.  *See* Compl. ¶ 6.

> Paul Pelosi is inexcusable.  And look, there's still more we need to find out right now . . . I don't know what the hell is going on, but we always condemn violence no matter if it's against elected officials or everyday Americans."

*Id.*; Chase Decl. Ex. 7.  In the Update, Tapper quoted Nunes' statement from the Newsmax Interview that "we always condemned the violence no matter if it's against elected officials or everyday Americans."  Referring to Nunes' posts published *after* his Newsmax Interview, Tapper also observed that Nunes' statement "does not explain those social media posts, making light of the violence," and welcomed Plaintiff to come on CNN to address his activity on Truth Social.  Chase Decl., Ex. 6 at 12.

### C.    Venue Facts

As the above clearly establishes, the Segment pertained to commentary surrounding the assault on Pelosi in his California home, the state where Plaintiff resides.  Tapper reported the Segment from a studio in Washington D.C., where he regularly reports from and resides.  Declaration of Jake Tapper ("Tapper Decl.") ¶¶ 4, 9.  Employees who work out of CNN's D.C. or New York City bureaus produced the Segment.  *Id*. ¶ 9.  Furthermore, nothing Tapper discussed in the Segment pertained specifically to Florida—Florida was never referenced in the Segment—and Tapper never traveled to Florida in relation to the Segment.  *Id.* ¶¶ 9, 11–12.

In an attempt to plead venue, Plaintiff alleges in a wholly conclusory fashion that "Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2)."  Compl. ¶ 13.  He alleges that the "defamation which is the basis of this lawsuit was committed in the Middle District of Florida *in addition to all over the world.*"  *Id.* (emphasis added).  Nunes also alleges that he "works in Sarasota County" but he does not cite any

statement in the Segment that relates to his employment.  And he recites various facts about CNN's general ties to Florida, connections that have nothing to do with the facts at issue in the action.  *Id.*  Importantly, he also pleads that "Tapper is a citizen of the District of Columbia."  *Id.* ¶ 10.

### D. The Complaint

On November 19, 2022, Plaintiff filed this action in the Middle District of Florida.  Plaintiff brings one count of defamation based on five statements from the Segment that he claims are false and defamatory:

> (1) "He [referring to President Donald Trump], at least, did condemn the attack on Paul Pelosi, as did House Republican Leader Kevin McCarthy, as did Senate Minority Leader Mitch McConnell."

> (2) "But you know what, far too many other Republicans and Conservative leaders are out there instead spreading, insane, offensive[,] and false conspiracy theories, such as the complete and utter lie, the deranged smear that Paul Pelosi and the attacker, the man who hit him in the head with a hammer, were in a sexual relationship."

> (3) "It's hard to fathom the kind of mind that hears of a tragedy, like what happened to 82-year-old Paul Pelosi, and decides to traffic in this filth.  But sadly, Donald Trump Jr. is hardly alone.  Former Republican Congressman and Chairman of the House Intelligence Committee, Devin Nunes, who now runs Trump's social media company, Truth Social, shared this Halloween image with the words 'at least this guy has his clothes on.'  Nunes also reposted this meme, using a poster for the gay romantic comedy *Bros*, twisting it into a smear of Paul Pelosi.  And, again, the man who tried to bash Paul Pelosi's head in with a hammer.  Words fail."

> (4) "What is wrong with these people?"

> (5) "In addition to being an inhuman and inhumane response to a tragedy, it's a lie . . . Pelosi did not know the suspect."

Compl. ¶ 1 (the "Statements").  Plaintiff does not dispute that one day after the attack on Pelosi, he posted the image of a Halloween monster with a hammer, along with his

own commentary or that he "retruthed" the doctored movie poster of *Bros* that suggested a romance between Pelosi and his attacker.  Nunes nonetheless claims that the Statements imply that he "refused to condemn the violent attack on Paul Pelosi, and, instead, justified the violence and mocked or made fun of the attack, and lied and suggested that the encounter between Mr. Pelosi and Mr. DePape was sexual in nature." *Id.* ¶ 3.  CNN now moves to dismiss Nunes' meritless Complaint.

## ARGUMENT

### I.   THE COURT SHOULD DISMISS OR TRANSFER FOR IMPROPER VENUE

The Court should dismiss this action for improper venue because Plaintiff cannot satisfy the requirements of 28 U.S.C. § 1391(b)(1)–(2), the two bases claimed for venue lying in this District.  28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3).  "When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper."  *Hemispherx Biopharma, Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009).  The Court need not accept plaintiff's allegations as true if they are "contradicted by the defendants' affidavits." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004).  "When an allegation is challenged, the court may then examine facts outside of the complaint to determine whether venue is proper."  *Hemispherx*, 669 F. Supp. 2d at 1356.  "[W]hether venue is 'wrong' or 'improper' – is generally governed by 28 U.S.C. § 1391."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 55–56 (2013).  Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Id.* § 1391(b).  "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b)."  *Atl. Marine*, 571 U.S at 561.  Here, Nunes invokes Sections 1391(b)(1) and (b)(2) as the basis for venue, and correctly recognizes that Section 1391(b)(3) is not relevant since there is another district where the action could properly be brought.  Compl. ¶ 13.[5]

Initially, Plaintiff cannot establish venue under § 1391(b)(1).  Plaintiff does not allege—nor could he—that *both* Tapper and CNN reside in Florida as is required under Section 1391(b)(1).  *See* Compl. ¶ 10; Tapper Decl. ¶¶ 4–9.  Rather, Plaintiff affirmatively pleads that Tapper is a citizen of the District of Columbia (Compl. ¶ 10), which establishes that Tapper is a resident of D.C. for venue purposes, not Florida.  *See* 28 U.S.C. § 1391(c)(1) ("For all venue purposes—(1) a natural person, . . . shall be deemed to reside in the judicial district in which that person is domiciled").  Plaintiff alleges that he "works in Sarasota County" (Compl. ¶ 13), but, for venue purposes, the fact that Plaintiff works in Florida is irrelevant.  As set out above, the pertinent question is whether *all* of the *defendants* reside in the state of Florida.  Plaintiff's ties to

---

[5] The action could be brought in the District of Columbia—where Nunes has brought other actions—so Section 1391(b)(3) does not apply. *See McDowell v. Ham*, 2011 WL 2560342, at *2 (N.D. Fla. 2011) ("Section 1391(b)(3) does not apply because that provision is only applicable when there is no district in which the action may otherwise be brought."), *R&R adopted*, 2011 WL 2560328 (N.D. Fla. 2011); *Bell v. Rosen*, 2015 WL 5595806, at *3 (S.D. Ga. Sept. 22, 2015) (same).

the state simply do not matter. *See*, *e.g.*, *Hemispherx*, 669 F. Supp. 2d at 1357 (venue improper in Southern District of Florida, where plaintiff registered and headquartered, observing plaintiff "focuses largely on its own activities and location, but the proper focus of the venue inquiry is on the relevant activities of the Defendants").

Nor can Plaintiff establish venue in this District under Section 1391(b)(2), which permits an action to be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Not just any events or omissions satisfies this provision. Rather, "[o]nly those acts which were, in and of themselves, 'wrongful' or had a 'close nexus' to the wrong could form the basis of proper venue." *Forbes v. Lenox Fin. Mortg., LLC*, 2008 WL 2959727, at *3 (S.D. Fla. July 30, 2008) (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)).

None of the events giving rise to the alleged libel took place in Florida and it is simply not the focal point of the harm. *See* Statement of Facts B. *supra*. The only connection to Florida is Plaintiff's alleged employment in Sarasota County. Compl. ¶ 8. But the Segment does not comment on or target Plaintiff in his employment, rather, it concerns Plaintiff's personal commentary on the Truth Social website. But more fundamentally, the venue statute "protect[s] defendants" and thus "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick,* 321 F.3d at 1371-72; *Hemispherx*, 669 F. Supp. 2d at 1356-57 (same); *Montgomery v. Risen*, 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016) (venue improper where defendant's newsgathering related to challenged statements occurred in Washington, D.C., not Florida). Here, CNN and Tapper did nothing relevant to this action in Florida.

14

While Florida is plainly an improper venue for this action, Plaintiff could have brought this case in the District of Columbia under either Section 1391(b)(1) or 1391(b)(2).  CNN is a resident of Washington, D.C. for purposes of the venue statute because it is subject to personal jurisdiction in that District.  *See* 28 U.S.C. § 1391(c)(2).  And Tapper is also a resident of Washington, D.C. because he is domiciled there.  *See* 28 U.S.C. § 1391(c)(1); Tapper Decl. ¶ 4; Compl. ¶ 10.  As such, the requirements of 28 U.S.C. § 1391(b)(1) are therefore satisfied.  Section 1391(b)(2) is also satisfied with respect to D.C. since a "substantial part of the events or omissions giving rise to the claim occurred" there.  *See* Tapper Decl. ¶ 9.  As the action "may otherwise be brought" in the District of Columbia, Plaintiff may not invoke (and has not invoked) the "fall back" venue provision of Section 1391(b)(3) to bring this suit in Florida.  *Algodonera De Las Cabezas S.A. v. Am. Suisse Capital, Inc.*, 432 F.3d 1343, 1345 (11th Cir. 2005).  In short, the Court should dismiss the action for improper venue.

## II. IN THE ALTERNATIVE, THE COURT SHOULD TRANSFER THIS CASE TO THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. § 1404(A)

In the event the Court decides against an outright dismissal, it should exercise its discretion to transfer this action to the U.S. District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a).  In deciding a Section 1404(a) transfer motion, a court must first determine whether the action could have been brought in the district to which the transfer is sought.  *See, e.g., Osgood v. Disc. Auto Parts, LLC*, 981 F. Supp. 2d 1259, 1263 (S.D. Fla. 2013).  As discussed above, venue is most certainly proper in the District of Columbia under either 1391(b)(1) or 1391(b)(2).  *See supra* § I.

15

Where, as here, venue is proper in the transferee district, the court must "assess whether convenience and the interest of justice require transfer to the requested forum." *Osgood*, 981 F. Supp. 2d at 1263–64. Nine factors are evaluated in this inquiry:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to other sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the ability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) [the] forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Signature Flight Supp. Corp. v. Am. Trans Air, Inc.*, 2010 WL 11508138 (M.D. Fla. Feb. 10, 2010) (citing *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)). Here, convenience and the interests of justice mandate transfer to the District of Columbia, as most of the factors favor transfer, and two factors are, at worst, neutral.

*First*, courts in this Circuit have held that "[t]he convenience of both the party and non-party witnesses is probably considered the single most important factor in the analysis whether a transfer should be granted." *Gonzalez v. Pirelli Tire, LLC*, 2008 WL 516847, at *2 (S.D. Fla. Feb. 22, 2008) (citation omitted); *Loveland ex rel. Loveland v. State Farm Fire & Cas. Co.*, 2013 WL 1836450, at *2 (S.D. Fla. May 1, 2013). For purposes of this analysis "the key witnesses are those which have information regarding the liability of Defendant. Damages witnesses are accorded less weight due to the fact that without liability, there are no damages to recover." *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004) (citation omitted) (transferring defamation case to defendant's home district). Here, because employees of CNN's D.C. and New York City bureaus produced the Segment, most of the

16

relevant witnesses reside in the D.C. or New York City areas. Tapper Decl. ¶ 9. Those individuals would testify about the central issues in this case, including the production of the Segment and the decision to telecast the Segment. *See id.* ¶¶ 9–13. Neither the Plaintiff nor any of Defendants' expected party witnesses reside in the Middle District of Florida, or anywhere near there. *Id.* ¶¶ 4, 9–13

*Second*, the choice of law factor favors transfer because D.C. law should apply to this case. There is an "advantage to 'having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.'" *Pferdmenges v. Bindra*, 2012 WL 12867831, at *5 (S.D. Fla. Nov. 20, 2012) (citation omitted). A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits. *See*, *e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016). In defamation cases, Florida courts apply the "most significant relationship" test, which considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil[e], residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (citations omitted). *See Michel v. NYP Holdings, Inc.*, 2015 WL 1285309, at *3 (S.D. Fla. Mar. 4, 2015) ("[T]he Court notes that applicability of New York defamation law to a New York publication encourages 'certainty, predictability and uniformity of result' and 'ease in the determination and application of the law to be applied'") (citations omitted), *aff'd in relevant part*, 816 F.3d 686.

17

Here, it is clear that the District of Columbia has the most significant relationship to this case, and, therefore, its substantive law should apply. Although CNN is incorporated in Delaware and headquartered in Atlanta, Tapper reported the Segment from CNN's D.C. studio and employees of CNN's D.C. and New York City bureaus produced the Segment. Tapper Decl. ¶ 9. Tapper is domiciled in the District of Columbia and reported the Segment from that jurisdiction. Tapper Decl. ¶¶ 4, 9. Florida's relationship to this case is tenuous at best. None of the parties reside in Florida. Plaintiff is a resident of California, *see* Compl. ¶ 8, and his only discernable connection to Florida is that for some of the year he works in Sarasota, Florida. This sort of weak connection is insufficient to dictate that Florida law applies. In fact, in *Michel*, the Eleventh Circuit applied New York law in a defamation action where Michel, a Florida resident, brought a libel suit against the *New York Post*, reasoning that the application of New York law was "plainly appropriate" because, among other things, the article at issue was published in New York, the defendant and witnesses were residents of New York, and plaintiff's domicile in Florida was "of little relative importance." 816 F.3d at 694; *see also Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *11 (M.D. Fla. Apr. 6, 2010) (applying Florida law to California domiciliary's defamation claim against Florida resident), *aff'd*, 451 F. App'x 862 (11th Cir. 2012). Here, the basis for applying D.C. law is even stronger because, unlike in *Michel*, Plaintiff does not even allege to be domiciled in Florida. Accordingly, Washington, D.C. law likely applies to this case, which weighs in favor of transfer.

*Third*, the fact that this case arises largely from Defendants' actions in

Washington D.C. makes D.C. the locus of operative facts, another "important factor" in favor of transfer.  *See Ramsey*, 323 F. Supp. 2d at 1358; *Comaford v. Wired USA, Ltd*, 1995 WL 324564, at *4–5 (N.D. Ill. May 26, 1995) (plaintiffs' home state "bears no relation to the events giving rise to the cause of action" even though national magazine was distributed there).  Tapper reported the Segment from CNN's D.C. studio and employees of CNN's D.C. and New York City bureaus produced the Segment.  Tapper Decl. ¶ 9.  Further, all of the related research for the Segment occurred in D.C.  *Id.* ¶ 12.  This is, accordingly, another significant factor in favor of transfer.

*Fourth*, almost all relevant documentary evidence is located in Washington D.C. or New York City and none is located in Florida.  Tapper Decl. ¶¶ 9, 12.  Although the ability to transmit documents electronically has diminished the importance of this factor, it remains a relevant consideration.  *See*, *e.g.*, *Suomen Colorize Oy v. Dish Network L.L.C.*, 801 F. Supp. 2d 1334, 1339 (M.D. Fla. 2011); *see also Ramsey*, 323 F. Supp. 2d at 1357 (transferring defamation case to venue where defendants were based because evidence was located there).  As none of the documents relevant to this case are located in Florida, this factor also favors transferring the action to Washington D.C.

*Fifth*, for all of these reasons, trial efficiency and the interests of justice also favor transferring this case to Washington D.C.  *Pferdmenges*, 2012 WL 12867831, at *5.  A trial in Florida would occur hundreds of miles (or more) from *all* defendants, any non-party witnesses, the most significant documents, and where the events at issue occurred.  The District of Columbia, however, is closer to both Defendants, witnesses, and the place of the underlying events.

*Sixth*, the weight usually afforded a plaintiff's choice of forum is diminished here since the relevant facts occurred in D.C. and Plaintiff is a California resident.  When, as here, "the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and is in fact given reduced significance."  *Osgood*, 981 F. Supp. 2d at 1266-67 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 987 (E.D.N.Y. 1991)).   Similarly, a plaintiff's choice of forum is also entitled to "minimal deference" where it is not the plaintiff's "home forum."  *Cellularvision Tech. & Telecomms., L.P. v. Alltel Corp.*, 508 F. Supp. 2d 1186, 1189 (S.D. Fla. 2007); *accord Culp v. Gainsco, Inc.*, 2004 WL 2300426, at *7 (S.D. Fla. Oct. 1, 2004).   Accordingly, very little weight should be placed on the Plaintiffs' choice of forum and this factor should not weigh into the transfer calculus.

*Finally*, the last factors—the relative means of the parties and the ability to compel third party witnesses—are neutral.  Plaintiff is a serial litigant who has filed suit in federal courts across the country including multiple suits in the District of Columbia.  *See supra note* 2.  He is the CEO of Truth Social, and until his resignation in 2021, was one of the most powerful elected officials in Congress.  He can clearly afford to litigate this case in the District of Columbia.  And since the Segment is commentary on documented public events (like Plaintiff's social media posts), there are few third-party witnesses.  As such, to the extent the Court declines to dismiss the action for improper venue, it should transfer the case to the District of Columbia.

III.    **PLAINTIFF FAILS TO STATE A CLAIM FOR LIBEL**

Should the Court deem that venue is proper, it should nevertheless dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor, *Burban v. City of Neptune Beach*, 920 F.3d 1274, 1278 (11th Cir. 2019), the Court is not obligated to accept as true legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange*, 934 F.3d 1270, 1273 (11th Cir. 2019); *see also Iqbal*, 556 U.S. at 678.  Unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the plaintiff's] complaint must be dismissed."  *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The Complaint fails to state a plausible defamation claim.  "In order to state a claim of defamation, [a] plaintiff must allege and prove four elements:  (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."  *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140-41 (D.D.C. 2017) (quoting *Solers, Inc. v. Doe*, 977 A.2d 941, 948 (D.C. 2009)).  Plaintiff cannot plead a viable defamation claim for the four independent reasons that follow.  Accordingly, his Complaint must be dismissed.

**A.     Statement One Is Not Of and Concerning Or Defamatory Of Plaintiff**

The first Statement Plaintiff challenges can be readily disposed of: "He [referring to President Donald Trump], at least, did condemn the attack on Paul Pelosi, as did House Republican Leader Kevin McCarthy, as did Senate Minority Leader Mitch McConnell."[6]  This Statement does not in any way reference or identify Nunes. Nor is it remotely defamatory of him or the identified individuals.

Plaintiff bears the burden of pleading that the alleged defamation is "of and concerning" him.  *See Parekh v. CBS Corp.*, 820 F. App'x 827, 833 (11th Cir. 2020). "[I]f a defamed person is *not* named in the defamatory publication, the communication as a whole [must] contain [] sufficient facts or references from which the injured person may be determined by the persons receiving the communication.'"  *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1258 (S.D. Fla. 2021) (citation omitted).  "The relevant inquiry" is whether the average reader "could reasonably have concluded that the plaintiff[] was implicated'" by the challenged statements.  *Id.* at 1259 (citations omitted).   Similarly, Plaintiff must establish that the challenged Statement is defamatory. *Levan v Capital Cities/ABC, Inc.*, 190 F.3d 1230, 1238-39 (11th Cir. 1999).

Here, Statement One expressly refers only to former-President Donald Trump, House Republican Leader Kevin McCarthy, and Senate Minority Leader Mitch

---

[6] This Statement does not appear as one sentence in the Segment.  After quoting Trump's statement that the Pelosi attack was "a terrible thing," Tapper notes that Trump "very quickly pivoted to attacking San Francisco for its high crime rate." "But he at least did condemn the attack on Paul Pelosi, as did House Republican Leader Kevin McCarthy.  The Segment then includes a video of McCarthy's statement before noting "as did Senate Minority Leader Mitch McConnell."

McConnell, not Plaintiff Nunes.   Further, even if Nunes was among the "several prominent Republicans" that condemned the attack—as he alleges he was—there is nothing remotely defamatory about speaking out and condemning the brutal and unwarranted attack on the husband of the Speaker of the House.   Accordingly, Statement One is non-actionable and should be dismissed.

### B.    The Other Statements are Non-Actionable Opinion

The remaining four Statements all concern Tapper's critique of certain Conservative leaders—including Plaintiff—"spreading insane, offensive and false conspiracy theories" including the "deranged smear" that "Paul Pelosi and the attacker … were in a sexual relationship."   Compl. ¶ 1, Statements 2–5.   These Statements are fully protected opinions based on disclosed and undisputed facts.

"A false statement of fact is the *sine qua non* for recovery in a defamation action."   *Byrd v. Hustler Magazine, Inc.*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983); *see also Hallmark Builders Inc. v. Gaylord Broad. Co.*, 733 F.2d 1461, 1464 (11th Cir. 1984); *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990).   Thus, the U.S. Supreme Court has held that statements of opinion that do "not contain a provably false factual connotation" are protected under the First Amendment to ensure "that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation."   *Milkovich*, 497 U.S. at 1.

Whether a statement is one of opinion or fact is a question of law for the court. *Turner v. Wells*, 879 F.3d  1254, 1262–63 (11th Cir. 2018); *see also Moldea v. N.Y. Times Co.*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) ("*Moldea I*").   Making this determination

requires a court to "examine the statement in its totality and the context in which it was uttered or published." *From v. Tallahassee Democrat, Inc.*, 400 So. 2d 52, 57 (Fla. 1st DCA 1981) (citation omitted); *see also Moldea v. N.Y. Times Co.*, 22 F.3d 310, 313 (D.C. Cir. 1994) ("*Moldea II*").[7]   Statements of pure opinion—*i.e.*, commentary or opinion based on facts set forth in the publication or which are otherwise known or available to the viewer—"are not the stuff of libel." *Turner v. Wells*, 198 F. Supp. 3d 1355, 1366 (S.D. Fla. 2016) (quoting *Rasmussen v. Collier Cty. Publ'g Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006); *Fortson*, 434 F. Supp. 2d at 1378; *see also Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) ("[S]tatements of pure opinion are protected from defamation actions by the First Amendment.").

Here, the remaining four Statements are textbook expressions of opinion based on fully revealed facts.  During the Segment, Tapper criticized Nunes and others for "trafficking in" and "spreading" false and inflammatory allegations regarding Pelosi. And Tapper did not abstractly characterize Nunes' actions; he displayed the very posts that he was commenting on.  Critically, Plaintiff does not contest that he posted on his Truth Social account an image of a menacing figure on Halloween with the provocative caption "at least this guy has clothes on."  And he expressly admits that he "retruthed" the photoshopped movie poster of a gay romantic comedy—which depicts two men grabbing each-others' rear ends and dons the caption "when Nancy

---

[7] *See also Fortson v. Colangelo*, 434 F. Supp. 2d 1369, 1379–80 (S.D. Fla. 2006); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001); *Thomas v. News World Commc'ns*, 681 F. Supp. 55, 64 (D.D.C. 1988).

is out of town"—clearly suggesting that Pelosi and his attacker were romantically involved.  *See* Compl. ¶ 6.  Plaintiff's decision to post his original comment with the menacing figure and to "retruth" the doctored movie poster to his 1.14 million followers indisputably had the effect of "spreading" the inflammatory and false content.  *See* Truth Social, @DevinNunes, https://truthsocial.com/@DevinNunes.[8]

From these undisputed facts, Tapper's observations are classic opinions and rhetorical hyperbole.  In Statement 2, Tapper takes issue with this "spreading" of "insane, offensive and false conspiracy theories," including the "deranged smear" and "lie" that Pelosi and his attacker were in a sexual relationship.  Statement 3 observes that its "hard to fathom" how one hears of the tragedy involving an 82 year-old Pelosi and decide to "traffic in this filth" in reference to Donald Trump Jr.'s post, before displaying Nunes' posts.  And Statement 5 criticizes individuals who mocked the Pelosi attack (like Nunes) as having an "inhuman or inhumane response to a tragedy."[9]  *Id.*  In short, Tapper's commentary is a "[s]ubjective assessment of [Nunes'] conduct and is not readily capable of being proven true or false."  *Turner*, 879 F.3d at 1264 (describing plaintiff's actions as "homophobic taunting" is pure opinion).

Instead, the challenged Statements are exactly "the loose, figurative language that no reasonable person would believe present[s] facts."  *Horsley v. Rivera*, 292 F.3d

---

[8] Plaintiff clearly acknowledges the effect that "retweets" on Twitter or "retruths" on Truth Social have on the internet, as he alleges in his Complaint that "retweets" of the original Segment amplified the alleged defamation in this action.  *See* Compl. ¶ 2.

[9] Additionally, Tapper's characterization of the conspiracy theory as a "lie" is predicated on the disclosed and undisputed fact that law enforcement officials had publicly made clear that any suggestion that Pelosi knew his attacker was false.  *See*  Chase Decl., Ex. 1.

695, 702 (11th Cir. 2002) (calling anti-abortion activist an "accomplice" to recent murder of abortion doctor was not actionable); *see also Fortson*, 434 F. Supp. 2d at 1382–83 (statement that plaintiff was a "thug" was rhetorical hyperbole); *Murray v. Pronto Installations, Inc.*, 2020 WL 6728812, at *4–5 (M.D. Fla. Nov. 16, 2020) (arguing that plaintiff "'mentally and physically abuse[s] people,' . . . 'lie[s] to you,' 'steal[s] from you,' 'reason for my heart attack,' and 'hid the worker's compensation from me'" constituted rhetorical hyperbole); *Thomas*, 681 F. Supp. at 64 (charges in editorial that political opponents were "garbage," "bums," "insane" persons, and "pitiable lunatics" reflect opinion, not fact).  When viewed in the context of the entire Segment—as the Statements must be—it is clear that Tapper was "expressing a subjective view, an interpretation, a theory, a conjecture, or surmise, rather than claiming to be in possession of objectively verifiable false facts" when he was commenting on the online conduct of Plaintiff and others.  *Guilford Transp. Indust., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000) (citation omitted).  Accordingly, these Statements are non-actionable.

Moreover, Tapper's rhetorical question (Statement 4)—"[w]hat is wrong with these people?"—is precisely the sort of non-actionable opinion that cannot form the basis of a defamation claim, since it "can only be read as [Tapper's] 'personal conclusion about the information presented, not as statement of fact."  *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir.1995) (citation omitted); *see also Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1338–39 (D.C. Cir. 2015) ("posing questions has rarely given rise to successful defamation claims" and noting lack of any case law allowing a defamation-by-implication claim based on mere questions).  Plaintiff could

not possibly show falsity (as he must) arising out of Tapper's rhetorical question.  It also is not actionable and cannot form the basis of a defamation claim.

In sum, Plaintiff cannot silence criticism of his social media posts making fun of an 82-year-old man assaulted by an intruder in his own home.  The Truth Social posts speak for themselves.  CNN and Tapper are fully protected to express their views concerning the content of the posts and the decision of influential individuals like Plaintiff to spread them to millions of followers.  The Statements are all non-actionable opinion that cannot form the basis of a defamation claim.

### C.    Plaintiff Cannot Reframe His Claim As Defamation By Implication

Given that none of the Statements on their face support a defamation claim, Plaintiff attempts to spin a defamation-by-implication claim.  Despite admitting that he posted or "retruthed" content mocking the brutal attack on Paul Pelosi—the identified basis for Tapper's commentary—Plaintiff's Complaint argues two false "implications" are created: that he "endorsed" the offensive movie poster he "retruthed" and that he never condemned the brutal attack on Pelosi.  Plaintiff's implication claim fails for several reasons.

*First*, a defamation-by-implication claim "arises where 'the defendant juxtaposes a series of facts so as to imply a defamatory connection between them,' even though the particular facts stated are true," or "where the defendant 'creates a defamatory implication by omitting facts.'"  *Parekh*, 820 F. App'x at 835 (quoting *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1108 (Fla. 2008)); *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (communication must convey materially

*true* facts from which a defamatory inference can reasonably be drawn).  Notably, as the *Parekh* court explained, defamation-by-implication claims require a plaintiff to plead that the challenged statements are *true*.  820 F. App'x at 835; *see also Jacoby v. Cable News Network, Inc.*, 537 F. Supp. 3d 1303, 1313 n.4 (M.D. Fla. 2021), *aff'd on other grounds*, 2021 WL 5858569 (11th Cir. Dec. 10, 2021) (per curiam).  Here, Plaintiff expressly alleges that each of the challenged Statements are *false*.  Compl. ¶ 1.  For this reason alone, Plaintiff's defamation-by-implication claim must be dismissed.  *Mangel v. Daza*, 2019 WL 6716161, at *2–3 (M.D. Fla. Dec. 10, 2019) (dismissing defamation-by-implication claim where plaintiff alleged underlying statements are "false"); *Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1123-24 (S.D. Fla. 2021) (same).

**Second**, Plaintiff's defamation-by-implication claim fails because Plaintiff provides no plausible facts to support his allegation that CNN intended or endorsed either of the alleged implications he presses.  "Because the Constitution provides a sanctuary for truth . . . the defamatory language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author ***intends or endorses*** the inference."  *Jews for Jesus*, 997 So. 2d at 1107 (emphasis added) (quoting *Guilford Transp. Indus.*, 760 A.2d at 596 (alterations omitted).  *See also Nunes v. WP Co. LLC*, 2022 WL 997826, at *3–4 (D.C. Cir. Apr. 1, 2022) (per curiam).  Plaintiff argues that the Statement concerning his "retruthing" of the doctored movie meme implies that he "endorsed" the post when, in fact, his Truth Social account contains a

28

disclaimer that "retruths do not equal an endorsement." Compl. ¶ 6.[10]  But Tapper never said that Nunes endorsed the suggestion that Pelosi and his attacker were in a relationship.  Endorsement was irrelevant to Tapper's critique which expressly took issue with Nunes (and others) "spreading" and "trafficking in" such "offensive" and "deranged smear[s]." And indisputably Nunes *did* in fact "traffic in" and "spread" the altered movie poster to his millions of followers.[11]

**Third**, Nunes argues that he denounced the attack on Pelosi in his Newsmax Interview on October 28, 2022, and that by omitting that fact, Tapper created the false implication that he never condemned the Pelosi attack.  *Id.*  In other words, Nunes argues that by condemning the attack on day one, he acquired blanket immunity from criticism, even for actions taken after this condemnation.[12]  Nunes does not—and cannot—dispute that he shared the vile and mocking posts making fun of Pelosi's tragedy on October 29, 2022, a day *after* his supposed condemnation.  This renders his "condemnation" all but irrelevant.  After publicly going on record that "no one should condone this violence," for Nunes to actively make fun of "this violence" the very next

---

[10] Plainly, this argument has no bearing on the post he directly made displaying a Halloween monster with a hammer, along with his snide commentary.

[11] Plaintiff's reliance on *Flynn v. Cable News Network, Inc.,* 2022 WL 3334716 (S.D.N.Y. Aug. 12, 2022) in his Complaint is misplaced.  *See* Compl. ¶ 6. The *Flynn* court grappled with whether an individual's decision to retweet a third-party's tweet amounted to a broad endorsement of the tweet or an entire ideology or belief system espoused by that individual.  The issue here is entirely distinct.  Here, Tapper is not criticizing Nunes for believing the false statement that Pelosi knew his attacker or was in a relationship with him.  He was criticizing Nunes' and others' cruel and casual decision to "traffic in" these "offensive and false conspiracy theories."  Compl. ¶ 1.

[12] Plaintiff's interview was no full-throated condemnation.  While condemning the violence, Plaintiff criticized Democrats and *Nancy Pelosi* for "allowing" harassment of him and his family, and suggested some of the very lies Tapper accused him of spreading.  *See* Chase Decl., Ex. 7 ("I've heard everything from the guy was a nudist born in Berkeley, some crazy guy on drugs in his underwear.").

day, warrants even stronger critique.  While Plaintiff would prefer that his half-hearted condemnation insulate him from criticism for his subsequent mocking of Pelosi's tragedy, the First Amendment does not oblige.

In this way, the present case is no different than *Turner*.  There, the appellant—an NFL coach who was the subject of a bullying investigation—claimed that appellees defamed him by implication when they reported that he taunted NFL players but failed to mention that such taunting was common in locker rooms.  The court rejected this argument, holding that it "fails in deference to the [d]efendants' editorial discretion in what to publish in their Report."  879 F.3d at 1270.  The court explained, "[t]he law of defamation is concerned with whether a publisher reports a story truthfully, not generously."  *Id*. (emphasis in original); *see also Nix v. ESPN, Inc.*, 2018 WL 8802885, at *6 (S.D. Fla. Aug. 30, 2018) ("[A] statement does not become defamatory if it omits facts unless the omission renders the report untrue.").  Here, omitting Plaintiff's qualified condemnation of the Pelosi attack does not render Tapper's commentary on Nunes' postings made *after* his statement untrue.  Moreover, it is clear from the Update that, contrary to Plaintiff's baseless assertions, CNN and Tapper did not endorse any implication that Plaintiff refused to condemn the violence inflicted on Pelosi.

In the end, Plaintiff's allegations to support his libel-by-implication claim do not provide any plausible support that CNN or Tapper intended or endorsed the implications he alleges.  The Segment was a broad commentary on the state of discourse in the country and the possible impact this conspiratorial discourse has in the wake of a tragedy.  Plaintiff's implication claim fails and should be dismissed.

### D.   Plaintiff Fails to Plead Actual Malice

Plaintiff's Complaint should be dismissed for the independent reason that he fails to plausibly plead actual malice.  In light of this country's "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964), the Supreme Court has held that the First Amendment provides heightened protection against libel suits brought by individuals "who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).  Whether a defamation plaintiff is a public figure is a question of law for the Court to resolve.  *Kahl v. Bureau of Nat'l Affairs*, 856 F.3d 106, 114 (D.C. Cir. 2017).  Courts therefore regularly resolve that question at the pleading stage based on the allegations of the complaint and information of which the Court can take judicial notice.  *See, e.g.*, *Hourani v. PsyberSolutions, LLC*, 690 F. App'x 1, 3 (D.C. Cir. 2017) (per curiam), *aff'g* 164 F. Supp. 3d 128, 132 & n.1, 136 (D.D.C. 2016); *Michel*, 816 F.3d at 703.  Nunes is without question a public figure.  He pleads that he previously served in Congress from 2003 to 2021, received the Presidential Medal of Freedom, and is now the CEO of TMTG (Compl. ¶ 8).  *See also, e.g.*, *Nunes*, 12 F.4th at 895 ("Representative Nunes is a public figure …"); *Nunes*, 513 F. Supp. 3d at 7 ("Plaintiff does not dispute that he is a 'public figure' for purposes of defamation law.").

As Plaintiff is a public figure, he must plead Defendants published the statements in the Segment with "actual malice*," i.e.*, "allege facts sufficient to give rise

to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Michel*, 816 F.3d at 702 (quoting *N.Y. Times Co.*, 376 U.S. at 280).  As the actual malice test is "not an objective [test]," *id.*, a defendant's conduct is "not measured by whether a reasonably prudent man would have published or would have investigated before publishing," *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), but whether each defendant "in fact entertained serious doubts as to the truth of his publication." *Id.*; *Levan*, 190 F.3d at 1239.  In the wake of the U.S. Supreme Court's decisions in *Twombly* and *Iqbal*, pleading actual malice has become a more rigorous burden.  Courts now frequently dismiss libel claims on upfront motions when a plaintiff's allegations of actual malice amount to little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'"  *Michel*, 816 F.3d at 704 (quoting *Iqbal*, 556 U.S. at 678) (collecting cases).[13]

Here, Plaintiff wholly fails to plead facts that if true could establish Defendants published the statements in the Segment with actual malice.  The Complaint recites a litany of allegations in an effort to cobble together a claim of actual malice, but each of them individually and collectively falls short of the heightened pleading burden.

*First*, Plaintiff alleges that CNN and Tapper were put on notice that Nunes had

---

[13] *See also Turner*, 879 F.3d at 1273 (affirming dismissal for failure to plead actual malice; plaintiffs pled defendants "knowingly and recklessly ignored or deliberately avoided learning information" but not "facts demonstrating that [d]efendants acted in these ways"); *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1253 (11th Cir. 2021) ("[B]are-bone allegations … are insufficient to show that SPLC doubted the truth of its designation."), *cert. denied*, 142 S. Ct. 2453 (2022); *Jacoby*, 2021 WL 5858569, at *5 ("[C]onclusory allegations" insufficient to plead actual malice).

condemned the attack on Pelosi and had seen the disclaimer in his Truth Social account that "retruths" do not equal endorsements (thus his "retruth" was not a suggestion that "Pelosi is gay").  These allegations, however, do not move the needle to support a finding that Defendants published the Segment knowing it was false or with serious doubts as to its accuracy.  As set forth above, the Segment's commentary did not turn on whether Nunes (or anyone else) previously condemned the assault or whether Nunes believed the offensive posts depicted true information.  Rather, the Segment took issue with people like Nunes who were trafficking and spreading noxious lies and conspiracy theories about the attack—something Nunes indisputably did.  The fact that Nunes was trafficking in these scurrilous memes about Pelosi *after* his condemnation undermined—if not repudiated—whatever condemnation he made the day before.  As such, the condemnation and disclaimer are simply irrelevant.[14]

Plaintiff's remaining allegations of actual malice are nothing more than the usual grab bag of conclusory platitudes that Courts have rejected time and again in his cases.[15]  For example, allegations that Tapper and CNN harbored "an institutional

---

[14] Plaintiff also ignores that Defendants televised the Update to the Segment.  While the Segment never stated that Nunes failed to condemn the Pelosi attack, the Update made clear that he condemned the attack in the Newsmax Interview.  This Update squarely negates any inference of actual malice.  *See New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 166 (Tex. 2004) ("New Times's prompt labeling and clarification in the next edition's *Buzz* column, as well as its explanatory responses to readers, evidence a lack of actual malice."); *Washington Nat'l Ins. Co. v. Adm'rs*, 2 F.3d 192, 196 (7th Cir. 1993) ("[S]ubsequent statements negating any defamatory implications may show the absence of malice by demonstrating that the speaker did not contemplate the defamatory reading in the first place.").

[15] Nunes has made, and courts have rejected, these very arguments before in his prior libel cases—in one instance even with the same phrasing.  *See Nunes v. WP Co.*, 513 F. Supp. 3d at 7–8 (Nunes "repeats various—largely conclusory—allegations," including that "Defendants 'manufactured the statements out of whole cloth,'" and that this failed to satisfy Rule 8 pleading requirements; "caselaw resoundingly rejects the proposition that a motive to disparage someone is evidence of actual malice"

and historic hostility" toward Plaintiff and acted on that bias against him (Compl. ¶ 21) is not probative of actual malice. *See Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 665 (1989) ("[A defendant's] motive in publishing a story . . . cannot provide a sufficient basis for finding actual malice."); *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications— inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law."). Nor are Plaintiff's conclusory and speculative allegations that "Tapper intentionally abandoned all journalistic standards and integrity" or that Defendants "set out to inflict maximum pain and suffering on Plaintiff" or that Defendants used "*ad hominem* and depraved words" to defame him, Compl. ¶ 21; *Levan*, 190 F.3d at 1239 ("Actual malice requires more than a departure from reasonable standards of journalism."). He provides no factual support for these conclusory allegations and does not even point to any specific language from the Segment itself. As Nunes knows from his prior litigations, such conclusory "bald assertions" are "no more than 'labels and conclusions' referencing the relevant legal standard," and cannot establish actual malice. *Nunes*, 2021 WL 3550896, at *5. Ultimately, Plaintiff has failed to point to any factual basis that would suggest that Defendants entertained serious doubts as to the accuracy of the Segment and the commentary it provides. Accordingly, Nunes failed to meet his burden of pleading actual malice, and his lawsuit must be dismissed.

---

(citation omitted)); *Nunes*, 2021 WL 3550896, at *5 ("Nunes's . . . conclusory references to the Post's purported animus and lack of standards fare little better; actual malice requires more.").

## CONCLUSION

For the foregoing reasons, Defendant CNN respectfully requests this Court dismiss the Complaint with prejudice, and such other relief the Court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for CNN communicated with counsel for Mr. Nunes via telephone in a good faith effort to resolve the motion, but the parties could not agree to a resolution of the motion. Mr. Nunes opposes the relief sought herein.

| | |
|---|---|
| SHULLMAN FUGATE PLLC<br><br>By: _/s/ Deanna K. Shullman_<br>Deanna K. Shullman (FBN 514462)<br>Minch Minchin (FBN 1015950)<br>2101 Vista Parkway, Ste. 4006<br>West Palm Beach, Florida 33411<br>Telephone: (561) 429-3619<br><br>dshullman@shullmanfugate.com<br>mminchin@shullmanfugate.com | DAVIS WRIGHT TREMAINE LLP<br><br>Elizabeth A. McNamara*<br>Jeremy A. Chase*<br>Alexandra Settelmayer*<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 489-8230<br>lizmcnamara@dwt.com<br>jeremychase@dwt.com<br>alexandrasettelmayer@dwt.com<br>*admitted _pro hac vice_<br>_Counsel for Cable News Network, Inc. and Jake Tapper_ |