# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DEVIN G. NUNES,

    PLAINTIFF,

v.

CABLE NEWS NETWORK, INC.
and JAKE TAPPER

    DEFENDANTS.

_____/

Case No. 8:22-cv-02659-SCB-AEP

MOTION OF DEFENDANT JAKE
TAPPER TO DISMISS THE
COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(2), 12(b)(3),
AND 12(b)(6)

      Defendant Jake Tapper ("Tapper") respectfully moves this Court for an Order dismissing the Complaint or transferring this action to the U.S. District Court for the District of Columbia for lack of personal jurisdiction over Tapper pursuant to Fed. R. Civ. P. 12(b)(2); or, in the alternative, for the reasons set forth in the motion to dismiss of Defendant Cable News Network, Inc. ("CNN"), (1) dismissing or transferring this action for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), (2) transferring this action pursuant to 28 U.S.C. § 1404(a), or (3) dismissing this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

      On October 31, 2022, Defendant Jake Tapper did a segment on the nationwide telecast of *CNN Tonight with Jake Tapper* (the "Segment") addressing the aftermath of a violent attack on Paul Pelosi, the husband of then-Speaker of the House of Representatives Nancy Pelosi, by an intruder in their San Francisco, California home. The Segment took to task a number of prominent individuals for making light of and

mocking the attack on social media, and used their offensive comments as a jumping off point both to call for more humane discourse in our national polity, to highlight the poor example being set by some leaders about whom more should be expected, and to caution his national audience on the dangers of demonizing those with whom they disagree politically. In response, one of the individuals Tapper criticized, Plaintiff Devin Nunes ("Plaintiff"), a California resident, filed this defamation action against Tapper, a D.C. resident, in *Florida*, a jurisdiction unrelated to the Segment and to which Tapper has *no* legally relevant contacts. This Court has no jurisdiction over Tapper.

Tapper's lack of connection to Florida is indisputable. Tapper is a Washington, D.C.-based television anchor and CNN's Chief Washington Correspondent. He does not rent, own, possess, or otherwise hold any interest in real property in Florida, he has no business interests in Florida, he has no bank accounts in Florida, and he has not engaged in any persistent course of conduct in Florida. Put simply, he is not at home in Florida in any respect.

Likewise, the Segment itself was part of a nationwide telecast that was not aimed at the state of Florida or its residents in any way. The Segment dealt with the reaction of prominent individuals to events occurring in California involving California residents. To the extent it touched on Plaintiff, it concerned the personal social media posts of an admitted California citizen. Tapper reported the Segment while in CNN's D.C. studio, where he generally reports from, and the Segment was produced by employees who work out of CNN's D.C. or New York City bureaus.

Tapper never traveled to Florida in relation to the Segment. The only connection between Plaintiff's defamation claim and the state of Florida is Plaintiff's thinly pled allegation that he suffered the alleged harm in Florida because he works there. But while the Segment criticized Plaintiff's statements made on Truth Social, Tapper's commentary was not directed at the business of Truth Social or Plaintiff's work with the company. In the end, both Florida law and the U.S. Constitution require that the claim against Tapper be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

Should the Court nevertheless find that it *may* exercise personal jurisdiction over Tapper, it should still dismiss the Complaint (or transfer the action) for the reasons set forth in the motion of CNN to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6) (incorporated herein). For all of these reasons, the Court should dismiss Plaintiff's Complaint as against Tapper.

## STATEMENT OF FACTS[1]

### A.    The Parties

Plaintiff Devin Nunes is a former U.S. Congressman from California who resigned in 2021 to become the CEO of Truth Media & Technology Group Corp. ("TMTG"), which operates the social media platform Truth Social. Complaint ("Compl.") ¶ 8. Plaintiff is a citizen of the state of California. *Id*. Defendant CNN owns and operates numerous news platforms and services, including the CNN

---

[1] Defendant takes the facts from the Complaint, and sources incorporated by reference or otherwise subject to judicial notice. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

television network and the website www.cnn.com.  *Id.* ¶ 9.  Defendant Jake Tapper is

an anchor and Chief Washington Correspondent for CNN.  *Id.* ¶ 10.

B.      **The Segment**[2]

On October 31, 2022, CNN aired the Segment in which Tapper provided

commentary on the "spreading" and "traffic[king]" of "offensive and false conspiracy

theories" following the violent attack on 82-year-old Paul Pelosi, husband of then-

Speaker of the House Nancy Pelosi.  The Segment expressed Tapper's view that

"offensive" responses to violent tragedies—regardless of the politics of the speaker—

are "unequivocally wrong," but the Pelosi attacks were "in a way, an attempt, to not

just downplay, but justify the violence."  Such "smears" and the "spreading . . . of false

conspiracy theories" contribute to the "public demonization of a person or a group

that results in the incitement of a violent act."  Ultimately, Tapper concluded that "in

this moment, we all need to consider how we talk about our fellow humans."  *See*

Declaration of Jeremy A. Chase ("Chase Decl."), Ex. 1 and Ex. 2.

The Segment was nearly eleven-and-a-half minutes long.  Tapper began by

noting the seriousness of the attack against Pelosi, which left him severely wounded

and hospitalized after his alleged attacker broke into the Pelosi residence and beat

Pelosi over the head with a hammer.  From the outset, Tapper's commentary

underscored how the attack was inextricably tied to online conspiracy theories and

misinformation.

---

[2] The Segment is described in further detail in the motion to dismiss of Defendant CNN, and Tapper incorporates the description of those facts by reference.

Following this introduction, Tapper noted that "[s]everal prominent Republicans have condemned the attack, including today, Donald Trump." After describing some of the condemnations, Tapper then contrasted those responses with others who reacted to the attack by "spread[ing] insane, offensive, and false conspiracy theories, such as the complete and utter lie, the deranged smear that Paul Pelosi and the attacker . . . were in a sexual relationship." By way of example, Tapper first identified Donald Trump Jr.'s social media comments mocking the attack, including posting an image on Twitter of a hammer and a pair of men's underwear with the caption "got my Paul Pelosi Halloween costume ready."

Next, Tapper observed that "Trump Jr. [was] hardly alone" in deciding to "traffic in this filth" in response to "a tragedy, like what happened to 82-year-old Paul Pelosi." Plaintiff Devin Nunes, a former Republican congressman who "now runs Trump's social media company" "shared this Halloween image" on Truth Social. The Segment displayed Nunes' post full screen, which depicted a menacing figure wielding a hammer, along with Nunes' own commentary: "at least this guy has his clothes on." Chase Decl., Ex. 3. The post is clearly dated October 29, 2022, a day *after* Nunes alleges he "condemned the attack." Compl. ¶ 6. Next, "Nunes also reposted this meme, using a poster for the gay romantic comedy '*Bros*,' twisting it into a smear of Paul Pelosi."[3] Chase Decl., Ex. 4. Again, the post was shown in full screen for viewers. Both posts are reproduced below:

---

[3] The display indicates that Nunes "ReTruthed" the doctored poster, a term that is synonymous with "repost" or "retweet" on Twitter: i.e., a user sharing another user's post via their own account.




The movie poster was doctored to suggest that "when Nancy's out of town" a gay romance ensued between Paul Pelosi "and the man who tried to bash Pelosi's head in with a hammer. Words fail!"

After further commentary on the posts of Nunes and others, Tapper then acknowledged that "[s]adly" "after every tragedy, like this, we unfortunately see some awful reactions" and provided instances of Democrats having "awful reactions" to tragedies, noting that all of these comments were "unequivocally wrong." But Tapper observed that "these smears about Paul Pelosi, they're not just evidence of partisanship blocking someone's ability to be human. They're conspiratorial. They're in a way an attempt to not just downplay but justify the violence. They're part of the same sickness that got Paul Pelosi injured to begin with."

In the end, Tapper observed that U.S. citizens must be wary of "stochastic terrorism" which is "the public demonization of a person or group that results in the incitement of a violent act, even without express orders to attack that person or group."

He cited several troubling examples before opining that by spreading these false, conspiratorial claims, the result is that "Paul Pelosi, to his attacker, was not a grandfather, or a father, or a husband, or a businessman. He was an enemy!" Tapper ultimately used all these events (and others) as a call for civility, and cautioned that "in this moment, we all need to consider how we talk about our fellow humans." In short, the Segment was broad commentary on the need for civil discourse, not mocking attacks or false conspiracy theories, in the wake of a personal and national tragedies.

## C. Jurisdictional Facts

Jake Tapper hosts various CNN news programs and previously hosted an evening program entitled *CNN Tonight with Jake Tapper.* Declaration of Jake Tapper ("Tapper Decl.") ¶¶ 1–2, 4. He is a resident of Washington, D.C. and works in CNN's Washington, D.C. bureau. Compl. ¶ 10; Tapper Decl. ¶ 4. Tapper is not a Florida resident and has no connections to the state of Florida that would give rise to personal jurisdiction over him. He does not rent, own, possess, or otherwise hold any interest in real property in Florida, he has no business interests in Florida, he has no bank accounts in Florida, and he has not engaged in any persistent course of conduct in Florida. Tapper Decl. ¶¶ 5–8.

Tapper reported the Segment while in CNN's D.C. Studio, where Tapper regularly reports from. Tapper Decl. ¶ 9. Employees who work out of CNN's D.C. and New York City bureaus produced the Segment. *Id.* Tapper reached out to Nunes for comment on his social media posts, texting him at his phone number with a California area code. *Id.* ¶ 10. Tapper understood Plaintiff was a California resident

and had no reason to believe that Plaintiff was anywhere other than Florida when he communicated with him. *Id.* Furthermore, nothing Tapper discussed in the Segment pertained specifically to Florida, and Tapper never traveled to Florida in relation to the Segment. *Id.* ¶¶ 9, 11–12.

Plaintiff's jurisdictional claims as to Tapper are barebones and stated in a single sentence within the Complaint: "Tapper [is] at home in Florida, and [is] subject to the Court's general and specific personal jurisdiction." Compl. ¶ 12. The only jurisdictional facts pled pertain to *CNN's* contacts with the state—not Tapper's. *See id.* ¶¶ 9, 13. Moreover, the only connection between Plaintiff's defamation claim and the state of Florida is Plaintiff's claim that he suffered harm in Florida on account of the Segment—notwithstanding his admitted status as a California resident—because he works in Florida for some of the year. But as noted above, Tapper's commentary during the Segment was not directed at the business of Truth Social or Plaintiff's work with the company. Rather, to the extent it discussed Plaintiff at all, it merely criticized his personal social media posts. Tapper Decl. ¶¶ 11, 13.

### D. The Complaint

On November 19, 2022, Plaintiff filed this action in the Middle District of Florida. Plaintiff brings one count of defamation based on five statements from the Segment that he claims are false and defamatory. *See* Compl. ¶ 1. Tapper now moves to dismiss Nunes' meritless Complaint.

# ARGUMENT

## I. THE COURT LACKS PERSONAL JURISDICTION OVER TAPPER

Plaintiff fails to allege facts under which this court could assert personal jurisdiction over Tapper. A plaintiff seeking to establish personal jurisdiction over a nonresident defendant "bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal jurisdiction "by submitting affidavit evidence in support of [his] position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted).

In deciding a motion to dismiss for lack of personal jurisdiction, this Court must (1) first determine whether there is a statutory basis for exercising personal jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193, and then (2) decide whether exercising jurisdiction comports with due process. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). To satisfy due process, Plaintiff must establish Tapper has "minimum contacts" with Florida such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

The Florida Supreme Court has held that "the federal due process analysis is *not* built into Florida's long-arm statute"; rather, the constitutional requirements are

"more restrictive" than the state's long-arm statute. *See Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010). Accordingly, courts routinely dismiss claims for lack of jurisdiction based on a finding that the plaintiff failed to satisfy due process, even if the requirements of the long-arm statute are satisfied. As discussed below, Tapper's *only* connection to Florida is that Plaintiff has sued him here. The claim against Tapper should accordingly be dismissed at the outset because Florida's long-arm statute does not reach him, and exercising personal jurisdiction over Tapper in Florida would not satisfy due process.

### A. Plaintiff's Allegations Fail to Satisfy Florida's Long-Arm Statute

This Court does not have personal jurisdiction over Tapper because Florida's long-arm statute, Fla. Stat. § 48.193, cannot be satisfied here. As an initial matter, Plaintiff does not identify which section of the long-arm statute allegedly applies to Tapper, a failing that itself justifies dismissal of the claim against him. *See Franklin v. Anderson Media*, 2011 WL 3875519, at *4 (M.D. Fla. Aug. 31, 2011). In fact, the long-arm statute is entirely absent from the Complaint.

Moreover, the only provision of the long-arm statute that could even *conceivably* apply here is not satisfied on the face of the pleadings.[4] The long-arm statute provides in part that a person submits himself to the jurisdiction of Florida's courts by

---

[4] Should Plaintiff attempt to claim Tapper was "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state" under Fla. Stat. § 48.193(1)(a)(1), such a claim would be meritless. Plaintiff makes no such allegations and the Tapper Declaration affirmatively refutes any such connection. Nor can Plaintiff impute CNN's business or offices within the state to Tapper. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

"[c]ommiting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). In the

context of defamation cases where the publication is available nationwide, Florida

courts have interpreted this provision to extend as far as cases where an out-of-state

defendant publishes allegedly defamatory material about a *Florida*-based plaintiff. *See*,

*e.g.*, *Internet Sols.*, 39 So. 3d at 1206, 1214–15 ("[A]llegedly defamatory material about

a *Florida* resident placed on the Web and accessible in Florida constitutes an 'electronic

communication into Florida' when the material is accessed (or 'published') in

Florida."). But here, Plaintiff is a citizen and resident of *California* (Compl. ¶ 8), and

Tapper is a citizen and resident of the District of Columbia. *Id.* ¶ 10; Tapper Decl. ¶

4. Moreover, the central focus of the Segment was on national political figures'

controversial responses to a violent attack on a California resident in his California

home. These basic and uncontroverted facts alone dictate that Florida's long-arm

statute cannot possibly extend to Tapper.[5]

## B. Exercising Jurisdiction Over Tapper Would Violate Due Process

As Plaintiff cannot satisfy Florida's long-arm statute, he most certainly will be

unable to satisfy due process, an inquiry which the Florida Supreme Court has held is

even "more restrictive" than the long-arm statute. *Internet Sols.*, 39 So. 3d at 1216.

---

[5] Further, the Complaint alleges only that the Segment was *accessible* to viewers in Florida. But mere *accessibility* is not enough. Rather, the plaintiff must plausibly plead that material was actually "*accessed*"—or in this case "viewed"—in Florida. *See Internet Sols.*, 39 So. 3d at 1203. And the Eleventh Circuit recently clarified that federal pleading standards require more than a bare recitation of *Internet Solutions*' two-part requirement. *Catalyst Pharms., Inc. v. Fullerton*, 748 F. App'x 944, 947 (11th Cir. 2018). It is simply not enough to merely offer conclusory allegations like those set forth in the Complaint. Compl. ¶¶ 8, 9. Instead, a plaintiff must plead specific facts to make a "prima facie showing" that third parties within Florida actually *accessed* the Segment on the Internet and *viewed* the Segment on CNN. *Catalyst Pharms.*, 748 F. App'x at 947.

Indeed, the Court lacks personal jurisdiction because Plaintiff has failed to allege facts supporting a prima facie case that Tapper has sufficient minimum contacts with Florida such that asserting either general or specific personal jurisdiction over him comports with due process.

### 1.  There Is No General Personal Jurisdiction Over Tapper

The suggestion in Plaintiff's Complaint that this Court has general personal jurisdiction over Tapper is entirely without merit.  General jurisdiction exists where a defendant's contacts with a state are "so 'continuous and systematic' as to render [them] at home in the forum state."  *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v Brown*, 485 U.S. 915, 919 (2011).  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile."  *Id.* at 137 (quoting *Goodyear*, 485 U.S. at 924).  Here, while the Complaint makes the barebones allegation that Tapper is "at home" in Florida and subject to the Court's general jurisdiction (Compl. ¶ 12), it contains no factual allegations that could establish any contacts—much less continuous and systematic contacts—with the state of Florida.  Instead, the Complaint *concedes* that Tapper is a citizen of Washington, D.C.  *Id.* ¶ 10; *see also* Tapper Decl. ¶¶ 4–8 (attesting that Tapper is domiciled in Washington, D.C. and has no connection to Florida at all).  As such, Tapper is not subject to the Court's exercise of general personal jurisdiction.

### 2.  There Is No Specific Personal Jurisdiction Over Tapper

Exercising specific personal jurisdiction over Tapper would similarly fail to meet constitutional due process requirements.  As the United States Supreme Court

has explicitly recognized, not all of a defendant's contacts with a forum are relevant for establishing whether specific jurisdiction exists. Instead, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (plaintiff's claims "must arise out of or relate to the defendant's contacts") (quoting *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017)). Specific jurisdiction exists only when "the defendant has 'purposefully directed' his activities at residents of the forum" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted).

Courts within the Eleventh Circuit apply a three-part test to determine whether specific jurisdiction comports with due process. This test asks:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355 (citations omitted). Plaintiff bears the burden of establishing each of the first two prongs; if he does, then the burden shifts to Tapper to show that the third prong precludes jurisdiction. *Id*. All three prongs weigh heavily against subjecting Tapper to this Court's jurisdiction.

*First*, Plaintiff cannot demonstrate that his claim arises out of or is related to any

Tapper contacts with the forum. This prong of the test focuses on the "causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1355–56. Here, no such causal relationship exists. Plaintiff offers only conclusory allegations of *CNN's* contacts and general operations in Florida, and the fact that *Plaintiff* works in Sarasota County, Florida. *See* Compl. ¶¶ 8–9. But it is black-letter law that "[e]ach defendant's contacts with the forum State must be assessed individually," and hence, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton*, 465 U.S. at 781 n.13; *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996) ("The writer is not the publisher; [the writer's] contacts must be assessed separately."). Plaintiff makes no allegations of *Tapper's* contacts with Florida (no such contacts exist), much less contacts that relate to the litigation. *See also* Tapper Decl. ¶¶ 4–9. Accordingly, his libel claim against Tapper does not "arise out of" Tapper's non-existent contacts with this state. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (no jurisdiction arose from defendant "conduct[ing] research" in forum state on matters "unrelated" to the "specific claims at issue").

*Second*, Plaintiff cannot demonstrate that Tapper purposefully availed himself of conducting activities in the state. To demonstrate that a defendant has purposefully availed himself of a forum in an intentional tort case like this one, the plaintiff must either satisfy the "effects" test articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984), or demonstrate that the defendant has the traditional minimum

contacts with the forum. *Louis Vuitton*, 736 F.3d at 1356–57. Neither permits the exercise of jurisdiction over Tapper here.

Initially, Plaintiff is wholly unable to satisfy the effects test as to Tapper. That test is satisfied "when the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle v. Trivago GMBH*, 56 F. 4th 1265, 2022 WL 17101160, at \*5 (11th Cir. Nov. 22, 2022). There is no evidence whatsoever that Tapper aimed the Segment at Florida. Rather, the Segment was aimed at a national audience, as it criticized multiple national political figures, including Plaintiff, for their offensive commentary concerning the assault on Pelosi in his California home. It commented on a wide swath of *national* tragedies, including the shooting of Congressman Steve Scalise, the attack on Senator Rand Paul, the January 6, 2021 insurrection at the Capitol, and countless others. *See* Chase Decl., Ex. 1; Ex. 2 at 3-4. During the Segment, Tapper called for greater civility in our *national* political discourse, and cautioned against viewing those with whom we disagree on *national* political issues as enemies. The Segment did not focus on or even mention Florida-specific issues.

Moreover, the distribution of the Segment was national both via CNN's telecast and digital circulation via the Internet. A media defendant's nationwide circulation of a publication is insufficient to confer personal jurisdiction over that defendant in every forum. *See Buckley v. N.Y. Times Co.*, 338 F.2d 470, 474 (5th Cir. 1964) (holding "mere circulation" of national newspaper and "sporadic news gathering by reporters on special assignment" in the forum do not satisfy due process); *Alternate Energy Corp.*

*v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) ("Under *Calder*, "the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court here"). In the television context, courts around the country have repeatedly held that nationwide telecasts of information by out-of-state defendants are insufficient to confer specific jurisdiction everywhere the telecast is received. *See, e.g.*, *Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 622-23, 625-27 (S.D. W. Va. 2020) (dismissing anchors and on-air reporters for CNN, MSNBC, CNBC, and Fox News for lack of personal jurisdiction; "The allegedly defamatory statements were comments during broadcasts about national political issues to a national audience. It would not be reasonable for Cupp or Lockhart to anticipate being haled into a West Virginia court on the basis of comments in a broadcast about political issues across several states aimed at a national audience."); *see also Mason v. Sony Pictures Entm't, Inc.*, 2021 WL 1663492, at *5 (N.D. Ga. Apr. 28, 2021) (plaintiff could not rely on "blanketed broadcasting of *Timeless* in all fifty states to establish that Sony Entertainment, Sony TV, and NBCU purposefully directed their alleged infringement activity into Georgia" and to hold otherwise would be to "effectively establish specific personal jurisdiction over Defendants and all their industry-wide competitors in every state in this country"); *Busch v. Viacom Int'l, Inc.*, 477 F. Supp. 2d 764, 772 (N.D. Tex. 2007) (no personal jurisdiction over comedian Jon Stewart in defamation case, as "[t]he piece was not directed at viewers of *The Daily Show* in Texas, but was broadcast nationwide" and there was no evidence that Texas was the focal point); *Corp. Trade, Inc. v. Golf*

*Channel*, 2012 WL 13034166, at *3 (D.N.J. Oct. 11, 2012) ("Other courts facing similar facts have generally held that a nationwide broadcast that can be viewed in the forum state is not sufficient to establish personal jurisdiction."); *Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F. Supp. 761, 764–65 (W.D. Ky. 1997) (defendant's programming available to cable subscribers in Kentucky was insufficient to support personal jurisdiction). In short, Plaintiff cannot "rely on [Defendants'] blanketed broadcasting" of the Segment nationwide to argue that Tapper purposefully directed his allegedly tortious activity into Florida.[6]

Further, Plaintiff is unable to demonstrate that Tapper caused harm that he should have anticipated would be suffered in Florida. As noted above, the Segment concerned numerous national figures and issues; nothing specific to Florida. Tapper understood the Plaintiff was a citizen and resident of California, just as Plaintiff alleges in his Complaint. *Compare* Compl. ¶ 8 *with* Tapper Decl. ¶ 10; *see also Alternate Energy Corp.*, 328 F. Supp. 2d at 1384 ("Plaintiff is an out-of-state resident, and there is no indication that Defendant's actions caused more harm to Plaintiff in Florida than anywhere else."); *see generally Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009)

---

[6] Nor can Plaintiff argue that mere posting the Segment on the Internet is sufficient to confer jurisdiction everywhere it is accessible. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1245–46 (10th Cir. 2011) (no jurisdiction where Internet post's content and forum were "geographically-neutral" and targeted "at a nation-wide or world-wide audience"); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010) (no jurisdiction existed absent showing that defendant "uniquely or expressly aimed her [online] statements at Missouri"); *Fertel v. Davidson*, 2013 WL 6842890, at *4 (D. Md. Dec. 18, 2013) ("nothing in [the defendant's] Internet posts" suggested "they were meant for a Maryland audience, as opposed to a national or even a global audience"); *Handshoe v. Torstar Corp.*, 2015 WL 8056364, at *3 (S.D. Miss. Dec. 4, 2015) (no jurisdiction where online article about Canadian lawsuit mentioned Mississippi plaintiff but "was not directed at Mississippi readers 'as distinguished from readers in other states'") (citation omitted).

(observing that in multistate defamation claims, the plaintiff's domicile is where the "principal injury" from a defamation will occur). There is simply no reason why Tapper would have anticipated any effects of the Segment would be felt in Florida.

Plaintiff also cannot establish purposeful availment under the "traditional minimum contacts test." *See Louis Vuitton*, 736 F.3d at 1356. This test requires the court to ask whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *Id.* at 1357. As this test looks to the *defendant's* contacts and actions, personal jurisdiction may not be exercised over Tapper based on Plaintiff's own tenuous relationships to Florida. As the Supreme Court recently made clear, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 284. Rather, Tapper's "suit-related conduct" must have a "substantial connection" to the forum; "random, fortuitous, or attenuated contacts" with "persons affiliated with the State" are not sufficient, and plaintiff's own contacts with the forum "cannot be decisive." *Id.* at 286. As set out above, Tapper has no substantial connection to the state of Florida as it pertains to this lawsuit or otherwise.

Finally, even if the Court could find Tapper purposefully availed himself of doing business in Florida, it still may not exercise jurisdiction over Tapper because doing so would "offend[] traditional conceptions of fair play and substantial justice." *Burger King Corp.*, 471 U.S at 464, 476 (citation and internal alterations omitted). At

this stage of the inquiry, courts look to

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental social policies.

*Id.* at 477 (citation and internal quotation marks omitted). Federal courts in this state routinely find the exercise of jurisdiction would violate due process where, as here, the defendant is located out of state and the conduct at issue occurred out of state. In *Bioheart*, *Inc. v. Peschong*, for example, the Court held that exercising jurisdiction over a California defendant would violate "fair play and substantial justice" principles where "it is not clear that resolving this action in Florida would be more convenient or effective than doing so elsewhere," particularly in the state where the defendant was located when making the allegedly defamatory statements. 2013 WL 1729278, at *5. Factoring into the Court's ruling was that the defendant would bear a "substantial burden" having to defend the action in Florida, Florida had no interest in adjudicating the dispute beyond the plaintiff maintaining its principal place of business in the state, and there was no showing that any of the evidence would be located in Florida. *Id.*; *see also Internet Sols. v. Marshall*, 2010 WL 11617855, at *5 (M.D. Fla. Sept. 30, 2010) ("Although [Plaintiff] maintains its principal place of business in Florida and is authorized to transact business in Florida, the Court cannot discern any other particular interest Florida has in resolving the dispute."). Here, Florida has *no* interest in adjudicating the dispute. Indeed, Plaintiff is not even a Florida resident. Compl. ¶ 8. Further, forcing Tapper, a D.C. resident, to litigate in Florida where he has no ties

whatsoever would impose a significant burden on him. Finally, all of the witnesses involved in the production of the Segment are located in or around the District of Columbia or New York City. As such, it would violate due process for this Court to assert jurisdiction over Tapper.

For all these reasons, this Court should grant Tapper's motion to dismiss for lack of personal jurisdiction.

## II.  IN THE ALTERNATIVE, THE COURT SHOULD DISMISS THE COMPLAINT FOR THE REASONS SET FORTH IN CNN'S MOTION TO DISMISS

In the event that the Court resolves to exercise jurisdiction over Tapper, it should nevertheless dismiss this case for the reasons more fully set forth in the motion of CNN to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(3) and 12(b)(6).

*First*, the Court should dismiss this action for improper venue because Plaintiff cannot satisfy the requirements of 28 U.S.C. § 1391(b)(1)-(2), the two bases claimed for venue lying in this district. 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3). Venue is improper under Section 1391(b)(1) because Tapper is a resident of D.C. for venue purposes. *See* 28 U.S.C. § 1391(c)(1) ("a natural person . . . shall be deemed to reside in the judicial district in which that person is domiciled"). Venue is likewise improper under Section 1391(b)(2) because none of the events giving rise to the alleged libel took place in Florida and it is simply not the focal point of the harm. *See Montgomery v. Risen*, 2016 WL 4119865, at *2 (S.D. Fla. Jan. 25, 2016). Further, Plaintiff could have brought this case in the District of Columbia under either venue provision. As such,

the Court should dismiss this action for improper venue or transfer it to the District of Columbia pursuant to 28 U.S.C. § 1406(a).

*Second*, in the alternative, the Court should exercise its discretion to transfer this action to the District of Columbia pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses, and in the interest of justice. *See Signature Flight Supp. Corp. v. Am. Trans Air, Inc.*, 2010 WL 11508138 (M.D. Fla. Feb. 10, 2010).

*Third*, should the Court resolve to retain jurisdiction and deem venue proper, it should still dismiss the Complaint pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff challenges five statements from the Segment,[7] claiming they would be understood to mean that he "refused to condemn the violent attack on Paul Pelosi," that he "mocked or made fun of the attack," and that he "suggested that the encounter between Mr. Pelosi and [his attacker] was sexual in nature." Compl. ¶ 3. Plaintiff's claim fails for four independent reasons. ***First***, statement 1, which merely observes that other political figures condemned the attack on Pelosi, is not of and concerning Nunes and not defamatory of anyone. ***Second***, the remaining four challenged statements are non-actionable opinion based on the disclosed and undisputed facts concerning Nunes' conduct on social media. Tapper's criticism of Nunes (and others) as having an "inhuman and inhumane response to a tragedy" when they "spread" or "trafficked" in these "insane," "offensive," and "deranged" "lies" and "conspiracy theories" following the Pelosi attack is textbook protected opinion. Moreover, the

---

[7] The five statements Plaintiff challenges as defamatory from the Segment appear in a numbered list in Paragraph 1 of the Complaint. *See* Compl. ¶ 1.

question raised by Tapper—"what is wrong with these people?"—is exactly the kind of rhetorical hyperbole protected under the First Amendment. ***Third***, Plaintiff's claim does not gain traction when reframed as libel by implication. The "omission" Plaintiff claims created a false implication—that he condemned the Pelosi attack *before* he chose to share the offensive memes—does not insulate him from criticism of the decision to post or retruth the offensive content on social media. *See* Compl. ¶ 5. ***Finally***, Plaintiff—who is unquestionably a public figure—fails to plausibly allege facts that, if true, could establish Defendants published the Segment with actual malice. For each of these independent reasons, Plaintiff's claim fails and this Court should dismiss this action with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant Jake Tapper respectfully requests that the Court grant his motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, (1) dismiss or transfer for improper venue pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), (2) transfer this action pursuant to 28 U.S.C. § 1404(a), or (3) dismiss this action for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for the reasons set forth more fully in the motion to dismiss of Defendant CNN; and provide any further relief that the court deems just and proper.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for CNN communicated with counsel for Mr. Nunes via telephone in a good faith effort to resolve the motion, but the parties could not agree to a resolution of the motion. Mr. Nunes opposes the relief sought herein.

| SHULLMAN FUGATE PLLC | DAVIS WRIGHT TREMAINE LLP |
|---|---|
| By: */s/ Deanna K. Shullman*<br>Deanna K. Shullman (FBN 514462)<br>Minch Minchin (FBN 1015950)<br>2101 Vista Parkway, Ste. 4006<br>West Palm Beach, Florida 33411<br>Telephone: (561) 429-3619<br><br>dshullman@shullmanfugate.com<br>mminchin@shullmanfugate.com | Elizabeth A. McNamara*<br>Jeremy A. Chase*<br>Alexandra Settelmayer*<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 489-8230<br>lizmcnamara@dwt.com<br>jeremychase@dwt.com<br>alexandrasettelmayer@dwt.com<br><br>*Admitted pro hac vice*<br><br>*Counsel for Cable News Network, Inc. and Jake Tapper* |