**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Tampa Division**

**CASE NO. 8:22-cv-2659-SCB/AEP**

DEVIN G. NUNES                              )
                                            )
          Plaintiff,                        )
                                            )
v.                                          )
                                            )
                                            )
CABLE NEWS NETWORK, INC.                    )
                                            )
          Defendant.                        )
—————————————————————)


# COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS OR TO TRANSFER VENUE

Plaintiff, Devin G. Nunes, by counsel, pursuant to Local Civil Rule 3.01(b), respectfully submits this Memorandum in Opposition to (1) Defendant, Cable News Network, Inc.'s ("CNN"), motion to dismiss for improper venue and failure to state a claim, and (2) Defendant, Jake Tapper's ("Tapper"), motion to dismiss for lack of personal jurisdiction, improper venue, failure to state a claim, or to transfer venue to the District of Columbia [*ECF Nos. 25 and 26*].

## I.  INTRODUCTION

This is an action for defamation.  On October 31, 2022, CNN and Tapper deliberately misrepresented to viewers in Florida and elsewhere that Plaintiff – the CEO of Trump Media & Technology Group ("TMTG") headquartered in Sarasota – refused to condemn the violent attack on Paul Pelosi, and, instead, justified the violence ***and*** spread

1

lies and smears about Paul Pelosi, including that he and the attacker "were in a sexual relationship". [*ECF No. 1 ("Compl."), ¶¶ 1, 2*].  Plaintiff alleges that the statements published by CNN and Tapper are materially false and defamatory, [*Id., ¶¶ 3, 4, 5, 17*] and that the statements were published with actual malice. [*Id., ¶¶ 6, 21*].  The complaint alleges that Plaintiff suffered the brunt of the harm to his reputation in the Middle District of Florida, where Plaintiff works and where Tapper and CNN broadcast the statements to a vast audience[1] of cable television subscribers and social media followers. [*Id., ¶ 8*].

The matter is before the Court on CNN and Tapper's motions to dismiss.  For the reasons stated below, the motions should be denied.

## II.  STANDARD OF REVIEW

### A.     *Personal Jurisdiction*

"There are two types of personal jurisdiction: specific and general." *Madara v. Hall*, 916 F.2d 1510, 1516 fn. 7 (11th Cir. 1990).  "General personal jurisdiction is based on a defendant's substantial activity in [a state] without regard to where the cause of action arose," whereas "specific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [the state]." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013) (alterations added) (citations omitted).

---

[1]     Over 10 million people—more than 55 percent of the State's population—reside within the Middle District, thus making the alleged defamatory statements in this venue highly significant.  Plaintiff works in Sarasota County.  CNN conducts substantial business in the Middle District, is registered in Florida as a foreign corporation, maintains a registered agent in Plantation, Florida, operates a bureau in Miami, Florida, and has hundreds if not thousands of agents in Florida who engage in daily business for CNN. [*Compl., ¶ 13*].

"A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  "Once the plaintiff pleads sufficient material facts to form a basis for *in personam* jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F.Supp.3d 1335, 1388 (S.D. Fla. 2014).  Where a defendant submits affidavits to the contrary, "the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint." *Polskie Linie Oceaniczne v. Seasafe Transport A/S*, 795 F.2d 968, 972 (11th Cir. 1986) (citation omitted).

To determine whether the Court may exercise personal jurisdiction over a defendant, in this case Tapper, the Court engages in a two part inquiry.  First, the Court must determine whether Florida's long-arm statute is satisfied because the defendant committed one of its enumerated acts that subject a party to jurisdiction within Florida.  Second, the Court must determine whether such exercise comports with due process. *Park v. Levinson*, 2019 WL 2995957, at * 2 (M.D. Fla. 2019).

**B.**     *Venue*

"On a motion to dismiss based on improper venue [under Rule 12(b)(3)], the plaintiff has the burden of showing that venue in the forum is proper." *Wai v. Rainbow Holdings*, 315 F.Supp.2d 1261, 1268 (S.D. Fla. 2004).  When evaluating a motion to dismiss, "[t]he court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits, and when an allegation is so challenged the

court may examine facts outside of the complaint to determine whether venue is proper." *Id.* "The court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Id.*; *AutoNation, Inc. v. Hall*, 2019 WL 3712008, at * 3 (S.D. Fla. 2019).

If the Court determines that venue is improper, it "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Title 28 U.S.C. § 1406(a)*.

**C.**     ___Rule 12(b)(6)___

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The threshold for surviving a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a "low one." *Farmer v. Humana, Inc.*, 2022 WL 432126, at * 2 (M.D. Fla. 2022) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A. et al.*, 711 F.2d 989, 995 (11th Cir. 1983)).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely

"conceivable." *Id.* "While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them." *Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) (cited with approval in *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at * 10 (S.D. Fla. 2022)).

In evaluating the sufficiency of a complaint in light of a motion to dismiss. the District Court construes the complaint liberally, accepts the pleaded facts as true and construes the facts in the light most favorable to the plaintiff. *Yachera v. Westminster Pharmaceuticals, Inc.*, 477 F.Supp.3d 1251, 1262 (M.D. Fla. 2020) (citing *Quality Foods*, 711 F.2d at 994-995)). Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## III.  DISCUSSION

Under Florida law, defamation has five elements: (1) publication; (2) falsity; (3) the statement was made negligently on a matter concerning a private individual; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008)). "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed." *Doe v. Am. Online, Inc.,* 783 So.2d 1010, 1016 (Fla. 2001) (quoting Restatement (Second) of Tort § 577 (1977)). Under Florida law, the tort of libel is not completed until the statements are published – meaning received, in the case of a letter or other writing, or accessed, in the case of an Internet wesbite. *See Silver v. Levinson*, 648 So.2d 240, 242 (Fla. 4th DCA 1994).

A.      **_Tapper Is Subject To Specific Personal Jurisdiction In Florida_**

"[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." *Louis Vuitton*, 736 F.3d at 1352.   In assessing personal jurisdiction, the Court first considers whether personal jurisdiction exists over a nonresident defendant under Florida's long-arm statute, and, if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Zimmerman v. Buttigieg*, 576 F.Supp.3d 1082, 1092 (M.D. Fla. 2021) (citing *Louis Vuitton*, 736 F.3d at 1350).

1.      **_Florida's Long-Arm Statute_**

A nonresident defendant is subject to personal jurisdiction in Florida "for any cause of action arising from ... [c]ommitting a tortious act within [Florida]." *Fla. Stat. § 48.193(1)(a)(2)*.   Jurisdiction under Florida's long–arm statute may be triggered where, as here, there are allegations about an out-of-state defendant's electronic or written communications into Florida and the cause of action arises from those communications. The tortfeasor's physical presence in Florida is not required. *Zimmerman*, 576 F.Supp.3d at 1093 (numerous citations and quotations omitted); *see also Internet Solutions, Inc. v. Marshall*, 39 So.3d 1201, 1211-1215 (Fla. 2010) (citing and quoting *Renaissance Health Publ'g, LLC v. Resveratrol Partners, LLC*, 982 So.2d 739 (Fla. 4th DCA 2008)); *see id. Wendt v. Horowitz*, 822 So.2d 1252, 1257-1258 (Fla. 2002) ("There is no question that physical presence is not necessarily required to satisfy the constitutionally mandated requirement of minimum contacts.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 476 (1985) ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there")).  In *Internet Solutions*, the Florida Supreme Court ruled that:

> "allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an 'electronic communication into Florida' when the material is accessed (or 'published') in Florida.  In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has intentionally made the material almost instantly available everywhere the material is accessible.  By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida.  When the posting is then accessed by a third party in Florida, the material has been 'published' in Florida and the poster has communicated the material 'into' Florida, thereby committing the tortious act of defamation within Florida.  This interpretation is consistent with the approach taken regarding other forms of communication".

39 So.3d at 1214-1215; *compare id. Macrotrend Capital Group, Inc. v. Edwards*, 2019 WL 2106421, at * 5 (S.D. Fla. 2019) ("Although Defendant intentionally committed tortious acts in Michigan, the injury was sustained in Florida.  Plaintiffs are Florida residents and Florida corporations.  Taking Plaintiffs' allegations as true, Defendant committed a tort causing injury in Florida which satisfies the long-arm statute by sending defamatory e-mails to Florida companies and residents using confidential information stolen from Plaintiffs, and by posting defamatory statements on websites accessible in Florida") (citing *Gubavrev v. BuzzFeed, Inc.*, 253 F.Supp.3d 1149, 1156-1157 (S.D. Fla. 2017) ("Because there is no dispute that the Buzzfeed website and the Buzzfeed mobile

application are accessible in Florida, the Article was accessible in Florida, and the Article was, in fact, accessed in Florida, it follows that Defendants have committed a tort in Florida for purposes of the jurisdictional analysis.").

In *Zimmerman*, the defendants published two tweets about the plaintiff that were read by several Florida residents.  The Court held that this satisfied Florida's long-arm statute. 576 F.Supp.3d at 1093.  Here, as in *Zimmerman*, Plaintiff clearly alleges that Tapper's statements were heard and read by Florida residents. [*Compl., ¶ 1, 8*].

### 2.    *Due Process*

The second prong of the jurisdictional analysis requires the Court to consider whether the exercise of jurisdiction would offend "the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'" *Zimmerman*, 576 F.Supp.3d at 1094 (citing and quoting *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *Buzzfeed, Inc.*, 253 F. Supp. 3d at 1157 (citing *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010)).

Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign sovereign. *Zimmerman*, 576 F.Supp.3d at 1094 (citing *Madara*, 916 F.2d at 1516).  This requirement is satisfied if the defendant has "purposefully directed" his activities at the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities. *Madara*,

916 F.2d at 1516 (citing cases). Once this has been established, the court considers various factors in determining whether the exercise of jurisdiction would comport with "fair play and substantial justice", including "the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies. *Id.* at 1517 (citing *Burger King*, 471 U.S. at 477).

In *Zimmerman*, the Court found that the allegations in plaintiff's complaint satisfied due process.

> "Given the allegations in the Amended Complaint, due process would not be offended by the exercise of jurisdiction over Defendants. If, as Zimmerman contends, his name is 100% synonymous with Trayvon Martin and the incident that resulted in Martin's death, the tweets are referring to him, and Defendants had a preconceived plan to discredit and destroy him as part of their political agenda, then Defendants were on fair warning that they could be subject to jurisdiction in this state for any alleged injury arising from their tweets and should have foreseen being haled into court in Florida.

> Moreover, the substantial justice and fair play factors weigh in favor of the exercise of jurisdiction. Defendants are national political figures so the Court does not expect that the burden in defending the lawsuit will be overwhelming; in fact, they have not alleged any. Additionally, because Zimmerman is a Florida citizen and alleges that the tweets giving rise to his cause of action are connected to the 2012 shooting of Trayvon Martin, which occurred in Florida, Florida has a significant interest in adjudicating the dispute and its exercise of jurisdiction would allow Zimmerman the most convenient means of obtaining relief and further the interstate judicial system's interest in obtaining the most efficient resolution of controversies. Hence, the Court's exercise of jurisdiction would comport with due process.

576 F.Supp.3d at 1095-1096 (citations omitted).

a.     _**Plaintiff's Claims Arise out of Tapper's Contacts**_

Here, Plaintiff's defamation claim arises out of Tapper's broadcast and tweet on October 31, 2022 and November 1, 2022.  *CNN Tonight with Jake Tapper* was a primetime (9:00 p.m.) news program.[2]  It aired nationally.  Tapper referred to Plaintiff by name.  Tapper referred to Plaintiff's Sarasota employer, TMTG.  Like the defendants in *Zimmerman*, Tapper knew his statements would be published in Florida.  CNN and Tapper intended for the statements to be accessible in the State of Florida to paying subscribers, social media followers and others located in Florida.  There is a direct relationship between Tapper, the State of Florida, and Plaintiff's claim.

b.     _**Purposeful Availment**_

In an intentional tort case, there are two applicable tests for determining whether purposeful availment occurred. *See Louis Vuitton*, 736 F.3d at 1356.  First, the Court may apply the "effects test," which the Supreme Court set forth in *Calder v. Jones*, 465 U.S. 783 (1984).  The Court may also apply the traditional minimum contacts test, which was set forth in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).

i.     _**The Calder Effects Test**_

Under the "effects test," a "nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356 (citing *Licciardello v. Lovelady*, 544 F.3d 1280, 1284 (11th Cir. 2008)).  This occurs when the tort: "(1) [was]

---

[2]     On September 22, 2022, CNN announced that Tapper would host CNN's nightly 9 p.m. primetime TV broadcast – the coveted slot formerly occupied by the disgraced Chris Cuomo – starting October 10 and continuing until November 11, 2022. [https://www.cnn.com/2022/09/22/media/jake-tapper-9-pm-primetime/index.html].

intentional; (2) [was] aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state." *Id.*

The *Calder* "effects test" is met here because Tapper intentionally published the statements, which were "aimed" at Florida by virtue of the fact that Tapper expressly identifies Plaintiff as the person who "runs Trump's social media company, Truth Social" in Sarasota. Tapper used information available on the Florida website of Truth Social to concoct the defamatory statements broadcast on October 31, 2022. *See Baronowsky v. Maiorano*, 326 So.3d 85, 90 (Fla. 4th DCA 2021) ("Baronowsky used information available through Florida police records and Florida medical board disciplinary records to make allegedly defamatory statements about Dr. Maiorano on his website."). Tapper should have anticipated that harm would be felt in Florida, where he knew Plaintiff works. Further, on November 1, 2022 [*Compl., ¶ 2*], Tapper intentionally used social media to blast the October 31, 2022 broadcast to his followers in Florida. [https://twitter.com/jaketapper/status/1587410359526227969]. Tapper has an enormous reach and engagement on social media. He has 3.1 million followers on Twitter alone. His followers include many prominent "blue checks" living in Florida, including Daniella Levine Cava (Mayor of Miami-Dade County, Rick Wilson (co-founder of the infamous "Lincoln Project"), and hundreds of others. https://twitter.com/jaketapper/followers]. Tapper knew that his false and defamatory statements about Plaintiff would be distributed and published in Florida. Given his knowledge, it was reasonably foreseeable to Tapper that Plaintiff would suffer injury in Florida as a result of his publication of the false statements. Like the defendants in *Zimmerman*, Tapper had "fair warning" that he could

be haled into court in Florida for false statements accessed by professionals, political adversaries and other readers in Florida.  In *Gubarev v. BuzzFeed*, the Court found that:

> When Defendants published their unverified Dossier via their website and mobile application, Defendants knew it would be viewed around the world, and given the international scope of its contents, should have anticipated that the effects of the publication might be felt in different fora, including the fora where Plaintiffs are located.  Accordingly, Defendants cannot claim surprise at being haled into court in the Southern District of Florida."

253 F.Supp.3d 1159.  Here, as in *Zimmerman* and *Gubarev*, the exercise of personal jurisdiction over Tapper comports with Due Process.

### c.  *Fair Play And Substantial Justice*

The exercise of personal jurisdiction over Tapper comports with "fair play and substantial justice".  Tapper is a national anchor for one of the largest media outlets in the world.  CNN acknowledges that it is subject to personal jurisdiction in Florida.  The burden on Tapper to litigate in Florida, therefore, is *de minimis*.  As the United States Supreme Court noted in *Keeton*, Florida has a significant interest in redressing injuries that occur within the State.  *Keeton,* 465 U.S. at 776 ("it is beyond dispute that New Hampshire has a significant interest in redressing injuries that actually occur within the State.").  Plaintiff works in Florida.  He has a significant interest in obtaining convenient and effective relief in Florida. *Compare Gubarev*, 253 F.Supp.3d at 1163 ("Florida maintains a strong interest in preventing the publication of defamatory materials in Florida and protecting its residents, such as Plaintiff Webzilla, from damages that result from such publication.  Plaintiffs maintain an interest in obtaining convenient and effective relief in Florida due to Plaintiff Webzilla's presence in Florida.  Lastly, Plaintiffs have established that the judicial system's interest in resolving the dispute comports with 'fair play and substantial justice' because the Southern District of Florida,

as well as this Court in particular, ensures that cases are moving forward in a timely and efficient manner, as demonstrated by the statistics issued by the Administrative Office. Accordingly, the Court finds that the exercise of personal jurisdiction over Defendants comports with fair play and substantial justice.").

**B.**   **Venue Is Proper**

Title 28 U.S.C. § 1391 governs the venue in all civil actions brought in District Courts of the United States.  Pursuant to § 1391(b)(2), a civil action may be brought in a judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred".  It is well-established that § 1391(b)(2) "does not limit venue to the place where all or most of the events giving rise to the claim occurred; the statute places venue in every district where a 'substantial part' of the events occurred." *Marley v. Jetshares Only, LLC*, 767 F.Supp.2d 1337, 1339 (S.D. Fla. 2011) (quoting *Waters Edge Living, LLC v. RSUI Indem. Co.*, 2007 WL 1021359, at * 4 (N.D. Fla. 2007)).  When evaluating whether a substantial part of the events giving rise to a claim occurred in a particular venue, Courts have held that "substantial events occurred within a venue when harm or injury was suffered in that venue." *Mobile Diagnostic Imaging, Inc. v. Gormezano*, 2012 WL 3244664, at * 2 (S.D. Fla. 2012) (citations omitted); *see id. Fentriss v. Gateway Bank FSB*, 2016 WL 4097066, at * 3 (M.D. Fla. 2016) ("Fentriss suffered the injuries from the defendants' conduct at his residence in the Middle District of Florida.  Thus, in accord with Section 1391(b)(2), 'a substantial part of the events...giving rise to' Fentriss's claims occurred in the Middle District of Florida.") (citing *Seminole Transp. Specialists, Inc. v. PDM Bridge, LLC*, 2009 WL 3822773, at 2-3

(M.D. Fla. 2009) (holding that venue was proper in part because the defendant damaged the plaintiff's business reputation in the venue)).

Plaintiff's complaint demonstrates that a substantial part of the events giving rise to his claim of defamation occurred in Florida, including publication of the false and defamatory statements and Plaintiff's damages.  Accordingly, the Middle District of Florida is a proper venue. *See McGrew v. Morgan*, 2021 WL 745194, at * 10 (M.D. Fla. 2021) ("The acts giving rise to the three tort claims are [defendant's] alleged emailing activities.  Of those acts, a substantial part occurred in Orange Park from where she allegedly sent several.  Additionally—but unnecessary to satisfy his burden—[plaintiff's] reputation was injured and he suffered emotional distress in Orlando"); *Tobinick v. Novella*, 2015 WL 328236, at * 2 (S.D. Fla. 2015) (finding venue to be proper in a defamation case where the allegedly defamatory content was accessible and accessed in the court's district); *Capital Corp. Merchant Banking, Inc. v. Corporate Colocation, Inc.*, 2008 WL 4058014, at * 1 (M.D. Fla. 2008) (venue was proper because the complaint alleged "the Defendants' offending activities have adversely impacted the Plaintiff's business in this district and the Plaintiff's injuries resulted from the Defendants' offending activities that occurred in this district.").

C.    *The Middle District of Florida Is A Fair And Convenient Forum*

Title 28 U.S.C. § 1404(a) provides that for the "convenience of the parties and witnesses" and "in the interest of justice, a district court may transfer any civil action to any other district … where it might have been brought."  Section 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org.,*

*Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal citation and quotation marks omitted).

Courts engage in a two-part inquiry to determine the propriety of transfer to another district: "(1) whether the action might have been bought in the proposed transferee court[3] and (2) whether various factors are satisfied so as to determine if a transfer to a more convenient forum is justified." *Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F.Supp.2d 1292, 199 (S.D. Fla. 2012). These private and public interest factors include: (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 fn.1 (11th Cir. 2005) (citation omitted).

### 1.    *Plaintiff's Choice of Forum*

Plaintiff works full-time in the Middle District of Florida. His choice of venue is entitled to "great deference." *See, e.g., Miami Air Intern, Inc. v. Saturn Freight Systems, Inc.*, 2013 WL 683500, at * 1 (S.D. Fla. 2013) ("Generally, federal courts will afford great deference to the plaintiff's choice of forum").

"The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quotation omitted); *JI Kislak Mortgage Corp. v. The Conn. Bank &*

---

[3]    Plaintiff concedes that this action might have been brought in the United States District Court for the District of Columbia.

*Trust Co.,* 604 F.Supp. 346, 347 (S.D. Fla. 1985) ("[I]n the absence of a clear difference in convenience, the plaintiff's choice is determinative.") (quotation omitted).

### 2. *Convenience of the Parties*

The Middle District of Florida is the most convenient forum for the Plaintiff. The District of Columbia is the most convenient forum for Defendants. As both parties will be required to "engage in similar cross-country travel" wherever this case is litigated, the parties are "in a relatively similar situation." *Advanced Aerodynamics, LLC v. Unmanned Cowboys, LLC*, 2016 WL 8738383, at * 4 (S.D. Fa. 2016).

This factor is thus neutral. *See VS Techs., LLC v. Twitter, Inc.*, 2011 WL 11074291, at * 7 (E.D. Va. 2011) ("transfer is inappropriate where it robs a plaintiff of his chosen forum and merely shifts the balance of inconvenience from defendant to plaintiff.").

### 3. *Witness Convenience and Access*

"The convenience of the witnesses is best served when witnesses are allowed to testify in the forum where they reside." *Morrissey v. Subaru of Am., Inc.*, No. 1:15-cv-21106, 2015 WL 9583278, at * 3 (S.D. Fla. 2015) (citation omitted). As to compulsory process, the Court cannot compel any unwilling witness residing outside of Florida to testify. *See Bell v. Kerzner Int'l Ltd.*, 2011 WL 12656691, at * 9 (S.D. Fla. 2011), *aff'd*, 503 F. App'x 669 (11th Cir. 2012); *see also* Fed. R. Civ. P. 45(c)(1).

In this case, Florida is convenient for Plaintiff's witnesses, but inconvenient for Defendants' witnesses. The reverse is true for the District of Columbia. Under these circumstances, transfer is inappropriate. The result of transfer would serve only to shift the balance of inconvenience to the Plaintiff. Further, Defendants do not indicate that

16

witnesses cannot travel to Florida or that videotape depositions will not suffice. S*ee Mullins v. Equifax Info. Servs., LLC*, 2006 WL 1214024, at * 8 (E.D. Va. 2006) ("[T]he moving party must demonstrate whether that witness is willing to travel to a foreign jurisdiction.") (internal quotation marks omitted).

### 4.    *Location Of Documents And Ease Of Access To Sources Of Proof*

Although relevant documentary evidence may be located in the District of Columbia, where *CNN Tonight with Jake Tapper* was broadcast on October 31, 2022, "[i]n a world with ... copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant." *Microspherix LLC v. Biocompatibles, Inc.*, 2012 WL 243764, at * 3 (S.D. Fla. 2012).

This factor is neutral and should be afford little weight. *See Trafalgar Capital Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F.Supp.2d 1274, 1288 (S.D. Fla. 2012) (affording ease of access to sources factor "minimal weight.").

### 5.    *Relative Means Of The Parties*

CNN is a subsidiary of Warner Bros. Discovery, Inc. [*Compl., ¶ 9*].  Warner Bros. third quarter total reported revenues were $9,823 million.  The company ended Q3 with $2.5 billion of cash on hand.  CNN and its employee Tapper have the financial means and are uniquely positioned to litigate this case in Florida.

Information on the parties' means weighs against transfer.

### 6.    *Forum's Familiarity With Governing Law*

This factor is neutral. *See Trans Am. Worldwide, LLC v. JP Superior Sols., LLC*, 2018 WL 3090394, at * 10 (N.D. Fla. 2018) (concluding forum's familiarity with

governing law is neutral consideration because "district courts often have little trouble applying the law[s] of other states.").

       **7.**     ***Trial Efficiency And The Interests of Justice In Totality***

In weighing this factor, Courts consider "administrative difficulties flowing from court congestion, the local interest in having localized controversies decided at home, the avoidance of unnecessary problems in conflict of laws or application of foreign law, and the unfairness in imposing jury duty on citizens in an unrelated forum." *Rothschild Connected Devices Innovations, LLC v. The Coca-Cola Company*, 2016 WL 1546427, at * 7 S.D. Fla. 2016) (citation omitted).

Both the Middle District of Florida and the District of Columbia are "congested" forums.  However, the docket in the Middle District moves faster than the District of Columbia:  https://www.uscourts.gov/sites/default/files/data_tables/jb_c5_0930.2022.pdf. Plaintiff and the community with the most interest in the matter is not the District of Columbia.  Plaintiff wants a Florida jury to hear a case about the publication of false and defamatory statements that caused injury in Florida.

Viewing the record in the light most favorable to Plaintiff, the Court should deny Defendants motion to transfer.

**D.**     ***Plaintiff Plausibly States a Claim of Defamation***

CNN and Tapper challenge several elements of Plaintiff's cause of action.  Those challenges will be addressed in order:

       **1.**     ***The False Statements Are "Of or Concerning" Plaintiff***

Regarding the second element, falsity, a false statement must be "of or concerning" the plaintiff. *Zimmerman v. Buttigieg*, 521 F.Supp.3d 1197, 1212 (M.D. Fla.

2021) (citations omitted).  In *Zimmerman*, the defendants argued that their tweets were not "about Zimmerman, do not mention his name at all, nor imply anything about him." The District Court agreed that "Zimmerman's name is nowhere mentioned in either tweet."  However, the Court held that "it does not appear that there is a strict requirement, in Florida, that the author of the defamatory publication specifically identify a person by name for the statement to be actionable.  The case law merely indicates that the statement must concern a … private person." 521 F.Supp.3d at 1212 (citing *Rapp*, 997 So.2d at 1106)); *see Wolfson v. Kirk*, 273 So.2d 774, 779 (Fla. 4th DCA 1973) ("The defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication … We conclude that the allegations in the complaint are sufficient as a matter of pleading to indicate that the plaintiff was intended to be the subject of the defendant's remarks and was understood to be such by the listeners.").

Here, as in *Zimmerman*, the complaint sufficiently alleges that CNN and Tapper's false statements are "of or concerning" Plaintiff.  Plaintiff is named.  His picture is shown.  The broadcast clearly implies and insinuates that although Donald Trump, Kevin McCarthy and Mitch McConnell all denounced the violent attack on Paul Pelsoi, Plaintiff did not. *See Manzari v. Associated Newspapers, Ltd.*, 2014 WL 12967363, at * 7 (C.D. Cal. 2014) ("Initially, the Court would reject Defendant's contention that the Article is not 'of and concerning' Plaintiff because the Article was not actually written about her. While Defendant is correct that the substantive reporting in the Article relates to the porn industry shutdown and the positive HIV test result, there is little doubt that – given the

prominence of Plaintiff's photo and the overarching headline – the Article's titular mention of an HIV-positive performer could reasonably be interpreted as referring to Plaintiff.").

### 2.   *CNN and Tapper's Statements Are Defamatory*

A statement is defamatory when its "gist" or "sting" is defamatory. *Greene v. Times Publ'g Co.*, 130 So.3d 724, 729-730 (Fla. 3rd DCA 2014).  A defamatory statement is a statement that "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So.2d at 1108-1109.  A statement that does such "on its face" can be referred to as defamatory *per se*, and extrinsic proof is not required to establish the statement's defamatory meaning. *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061, at * 16 (S.D. Fla. 2014); *see also Zimmerman*, 521 F.Supp.3d at 1214 ("defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject a person to hatred, distrust, ridicule, contempt or disgrace can suffice.  Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm.") (citation omitted); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'").

CNN and Tapper's statements are clearly defamatory *per se*. *See Music With Mar, LLC v. Mr. Froggy's Friends, Inc.*, 2020 WL 7768941, at * 5 (M.D. Fla. 2020) ("Courts have found a statement to be defamatory where it 'diminished [the plaintiff's]

professional reputation and substantially impaired its ability to conduct business.'") (citation and quotation omitted); *Axelrod v. Califano*, 357 So.2d 1048, 1050 (Fla. 1st DCA 1978) ("When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable per se").

### 3.      *The Statements Are Actionable*

It is well-established that statements of "pure" opinion are not actionable as defamation. *Turner*, 879 F.3d at 1262 (citing *Blake v. Giustibelli*, 182 So.3d 881, 884 fn. 1 (Fla. 4th DCA 2016) ("Statements of pure opinion are not actionable.")).  However, mixed opinion does not enjoy the same protection. *Zambrano v. Devanesan*, 484 So.2d 603, 606 (Fla. 4th DCA 1986).  The distinction between pure expressions of opinion and mixed expressions of opinion was discussed in *Hay v. Independent Newspapers, Inc.*, 450 So.2d 293 (Fla 2nd DCA 1984), where the Court said:

> "Pure opinion is based upon facts that the communicator sets forth in a publication, or that are otherwise known or available to the reader or the listener as a member of the public.  Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication.  Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion.  Pure opinion is protected under the First Amendment, but mixed opinion is not."

450 So.2d at 295 (citations omitted).  "Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact.  Simply couching such statements in terms of opinion does not dispel these implications." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990); *Deeb v. Saati*, 778 F.App'x

683, 587-688 (11ᵗʰ Cir. 2019) ("[A] speaker cannot invoke a 'pure opinion' defense, if the facts underlying the opinion are false or inaccurately presented.").

A statement that is "provable as false" or that can reasonably be interpreted as stating actual facts about an individual is actionable. *Milkovich*, 497 U.S. at 17-20.  By way of example, the Supreme Court suggested that the statement "[i]n my opinion Mayor Jones is a liar" would be potentially actionable, while the statement "[i]n my opinion Mayor Jones shows his abysmal ignorance by accepting the teachings of Marx and Lenin" would not be actionable. *Milkovich*, 497 U.S. at 20; *compare Zambrano*, 484 So.2d at 607 ("the Devanesans said that Zambrano left his medical practice and the hospital's on-call schedule, without notice; that he neglected his practice; and that he acted in an unprofessional and unethical manner.  In our view, these comments cannot be classified as pure opinion or 'rhetorical hyperbole.'  First, the statements on their face contain factual allegations.  Second, there is nothing in the record to suggest that the Devanesans presented any kind of factual background before speaking out against Zambrano.").

In this case, CNN and Tapper's statements are provably false.  The broadcast implies or insinuates that Plaintiff did not denounce the violent attack on Paul Pelosi, but this is untrue as TMTG advised CNN prior to publication. [*Compl., ¶ 6*].  Whether Plaintiff lied about Paul Pelosi and the attacker being in a "sexual relationship" is also provably false.  Plaintiff retruthed a meme that used a poster for the gay romantic comedy *Bros*, but Plaintiff did not endorse its content.  Prior to publication, Plaintiff advised Tapper that the retruth of the meme was **not** a suggestion by Plaintiff that "Pelosi is gay".  Plaintiff categorically stated that Tapper's insinuations were "wrong" and that "any

implication [from a retruth] would be reckless." [*Compl., ¶ 6*]; *see Santarsiero v. Martin*, 2021 WL 2856622, at * 9 (M.D. Fla. 2021) ("Based on the allegations in the SAC, the Court is unable to reach a determination as to whether defendant Franco's statement that Balis was a 'liar' is pure opinion.").

    **4.**   *__Actual Malice__*

"The existence of actual malice may be shown in many ways. As a general rule, any competent evidence, either direct or circumstantial, can be resorted to, and all the relevant circumstances surrounding the transaction may be shown, provided they are not too remote, including threats, prior or subsequent defamations, subsequent statements of the defendant, circumstances indicating the existence of rivalry, ill will, or hostility between the parties, facts tending to show a reckless disregard of the plaintiff's rights, and, in an action against a newspaper, custom and usage with respect to the treatment of news items of the nature of the one under consideration." *Herbert v. Lando*, 441 U.S. 153, 164 fn. 12 (1979).

Typically, actual malice is shown by an "accumulation" of evidence and inferences. *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2nd Cir. 2000) (in order to infer actual malice, the facts alleged "should provide evidence of 'negligence, motive and intent such that *an accumulation of the evidence and appropriate inferences* supports the existence of actual malice.'") (quoting *Bose Corp. v. Consumers Union of the United States*, 692 F.2d 189, 196 (1st Cir. 1982) (emphasis added in original)); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2nd Cir. 1969) ("There is no doubt that evidence of negligence, of motive and of intent may be adduced for the purpose of

establishing, by cumulation and by appropriate inferences, the fact of a defendant's recklessness or of his knowledge of falsity.").

In paragraph 6 of his complaint, Plaintiff alleges that CNN and Tapper knew their statements were false.  In paragraph 21, Plaintiff alleges that CNN and Tapper had the motive and intent to inflict harm through knowing falsehoods.  Accepted as true, these facts are suffice to show that CNN and Tapper published the statements with constitutional malice. *Dershowitz v. Cable News Network, Inc.*, 541 F.Supp.3d 1354, 1368 (S.D. Fla. 2021) ("The Complaint alleges that CNN knew its reports were false, it explains the reasons CNN and its employees knew the reports were false, it explains the nature of the alleged falsehoods, and it alleges who made the false statements.").

### E.    *Defamation by Implication*

Defamation can also occur by implication under Florida law.  A defendant may be held responsible for a defamatory implication if the defendant: "[1] juxtaposes a series of facts so as to imply a defamatory connection between them, or [2] creates a defamatory implication by omitting facts." *Rapp*, 997 So.2d at 1106.  Defamation by implication can also arise when "literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108 (quoted and cited in *Jacoby v. Cable News Network, Inc.*, 537 F.Supp.3d 1303, 1312 (M.D. Fla. 2021)).

Plaintiff's complaint suffices to allege a claim of defamation by implication under Florida law.  Plaintiff alleges that CNN and Tapper conveyed a false impression about Plaintiff when it omitted facts.  CNN and Tapper hid from viewers the fact that Plaintiff had, in fact, condemned the attack on Paul Pelosi – in fact, Plaintiff condemned the attack in stronger terms than President Trump, Leader McCarthy or Leader McConnell.  CNN

and Tapper also concealed the fact that Plaintiff, by simply retruthing the meme without comment, expressly did *not* endorse the purported content of the meme.   Contrary to CNN's suggestion, the tone, intended meaning and endorsement of the defamatory implication of the statements is clear from the words and images used by CNN. *See Nunes v. Lizza*, 12 4th 890, 899 (8th Cir. 2021) ("Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor.   The complaint points to the article's 'click-bait headline' … its discussion of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs undocumented labor.   The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication.   Thus, the complaint states a plausible claim for defamation by implication.").

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests the Court to deny CNN and Tapper's motions to dismiss or transfer venue.[4]

Signature of Counsel on Next Page

---

[4]       In its motion, p. 4, CNN represents that Plaintiff is "repeat defamation plaintiff, regularly suing media companies, with courts often dismissing his claims at the pleading stage."   Like Tapper's statements during the October 31, 2022 broadcast, CNN's motion omits material facts. *Nunes v. NBCUniversal Media, LLC*, 2022 WL 17251981 (S.D.N.Y. 2022) (motion to dismiss denied); *Nunes v. Lizza*, 12 F.4th 890 (8th Cir. 2021) (grant of motion to dismiss reversed on appeal); *Nunes v. WP Company, LLC*, 2021 WL  3550896 (D. D.C. 2021) (motion to dismiss denied).

DEVIN G. NUNES


By:    */s/ Jason R. Kobal*
        Jason R. Kobal, Esquire
        KOBAL LAW, P.A.
        12169 W. Lindebaugh Ave.
        Tampa, FL 33626
        (813) 873-2440
        koballaw@yahoo.com
        Florida Bar No.: 0542253

        *Counsel for the Plaintiff*

        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:  (804) 501-8272
        Facsimile:  (202) 318-4098
        Email:  stevenbiss@earthlink.net

        *Counsel for the Plaintiff*
        *(Application for Admission Pro Hac Vice*
            *To be Filed)*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 13, 2023 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to the Parties and all interested parties receiving notices via CM/ECF.

By:  */s/ Jason R. Kobal*
Jason R. Kobal, Esquire
KOBAL LAW, P.A.
12169 W. Lindebaugh Ave.
Tampa, FL 33626
(813) 873-2440
koballaw@yahoo.com
Florida Bar No.: 0542253

*Counsel for the Plaintiff*

Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net

*Counsel for the Plaintiff*
*(Application for Admission Pro Hac Vice*
       *To be Filed)*

**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**CASE NO. 8:22-cv-2659-SCB/AEP**

DEVIN G. NUNES                                    )
                                                  )
            Plaintiff,                            )
                                                  )
v.                                                )
                                                  )
                                                  )
CABLE NEWS NETWORK, INC.                          )
                                                  )
            Defendant.                            )
_____)

## DECLARATION OF DEVIN G. NUNES

I, Devin G. Nunes, state as follows, under penalty of perjury:

1.      I am over 21 years of age and otherwise competent to make this Declaration.  I have personal knowledge of the statements contained herein based upon (a) documents and information in my possession and control, (b) my personal observations, memory, and experiences, (c) public information, articles, blogs, truths, tweets, and statements by the Defendants on the Internet, and (d) documents known or reasonably believed to be in the possession, custody and control of others.   The statements in this Declaration are true and accurate to the best of my knowledge, information and belief.

2.      I am the Plaintiff in this action.  I reviewed my complaint before it was filed.  I have also reviewed my memorandum in opposition to Defendants' motions to dismiss for lack of personal jurisdiction, improper venue or to transfer, to which this

28

Declaration is attached.  I affirm that the facts stated in my complaint and above in my memorandum in opposition are truthful and accurate to the best of my knowledge and belief.  Those facts are incorporated herein by reference.

3.      I make this Declaration in support of my memorandum in opposition to Defendants' motions to dismiss.

Further the affiant saith not.

In accordance with 28 U.S.C. § 1746, I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct.

Executed in Sarasota, Florida, on February ___, 2023.


*/s/*_____
DEVIN G. NUNES