# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

DEVIN G. NUNES,

              Plaintiff,

v.                                        CASE NO.: 8:22-cv-2659-SCB-AEP

CABLE NEWS NETWORK, INC.
and JAKE TAPPER,

              Defendants.

_____/

## O R D E R

Before the Court are Defendant Cable News Network's ("CNN") Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) (Doc. 25) and Defendant Jake Tapper's ("Tapper") Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) (Doc. 26). Defendants filed Declarations and exhibits in support of their Motions. (Docs. 27, 28). Additionally, Defendants filed a Request for a Hearing on their Motions. (Doc. 29). Plaintiff, Devin G. Nunes ("Nunes") filed a Combined Memorandum in Opposition to Defendant's Motions ("Opposition").[1] (Doc. 33). With leave of Court, Defendants filed a Reply. (Doc. 36). For the reasons

---

[1] Included in Nunes' Opposition is his Declaration that is not dated or signed. (Doc. 33, attachment).

explained below, Defendants' Motions are due to be granted without need for a hearing.

## I. BACKGROUND AND STATEMENT OF FACTS

Plaintiff, Nunes, is a former United States Congressman from California who resigned in 2021 to become the Chief Executive Officer of Truth Media & Technology Group Corporation. ("TMTG"), which operates the social media platform Truth Social. (Complaint ("Compl."), Doc. 1, ¶ 8). Nunes is a citizen of the state of California. (*Id.*). He alleges he "works in Sarasota County." (*Id.*). Defendant CNN owns and operates numerous news platforms and services, including the CNN television network and the website www.cnn.com. (*Id.*, ¶ 9). Defendant Tapper is an anchor and Chief Washington Correspondent for CNN. (*Id.*, ¶ 10). He hosts various CNN news programs and previously hosted an evening program titled *CNN Tonight with Jake Tapper*. (Doc. 27, Declaration of Jake Tapper ("Tapper Decl."), ¶¶ 1-2). Tapper is a resident of Washington, D.C. (Compl., ¶ 10).

This lawsuit arises out of an October 31, 2022, segment of *CNN Tonight With Jake Tapper* ("the Segment"), aired from CNN's Washington, D.C. studio, in which Tapper provided commentary on the "spreading" and "traffic[king]" of "offensive and false conspiracy theories" following the violent attack on 82-year-

old Paul Pelosi ("Pelosi"), husband of then-Speaker of the House Nancy Pelosi.

(*See generally*, Compl.; Doc. 28, Declaration of Jeremy Chase ("Chase Decl."),

Ex. 1, Ex. 2, pp. 1–5). The Segment expressed Tapper's view that "offensive"

responses to violent tragedies—regardless of the politics of the speaker— are

"unequivocally wrong." (Chase Decl., Ex. 1; Ex. 2, pp. 1–5). The Segment was

nearly eleven-and-a-half minutes long. Tapper noted that "[s]everal prominent

Republicans have condemned the attack." (Chase Decl., Ex. 2 at 1). Tapper then

contrasted those responses with others who, despite any condemnation, reacted to

the attack by "spread[ing] insane, offensive, and false conspiracy theories, such as

the complete and utter lie, the deranged smear that Paul Pelosi ("Pelosi") and the

attacker . . . were in a sexual relationship." (*Id.* at 2). As one example, Tapper

mentioned that Nunes had shared on Truth Social, two days before Halloween, an

image depicting a menacing figure wielding a hammer, along with Nunes' own

commentary: "at least this guy has his clothes on." (*Id.*) The Segment also

displayed the Nunes' post full screen. (Chase Decl., Ex. 3). The post is dated

October 29, 2022, a day after Nunes alleges he "condemned the attack" on Pelosi.

(Compl. ¶ 6; Chase Decl., Ex. 3). Next, Tapper mentions that "Nunes also reposted

a meme, using a poster for the gay romantic comedy *Bros*, twisting it into a smear

3

of Paul Pelosi." (Chase Decl. at 2). Again, the post was shown in full screen for the Segment's viewers. (Chase Decl., Ex. 4).

In sum, the Segment was a broad commentary on the need for civil discourse, not mocking attacks or false conspiracy theories, in the wake of Pelosi's personal tragedy. On Monday, November 7, 2022, CNN televised an update to the Segment. (Chase Decl., Ex. 5; Ex. 6 at 12). Therein, Tapper quoted Nunes' statement from a Newsmax Interview he gave on October 28, 2022, that "we always condemned the violence no matter if it's against elected officials or everyday Americans." (*Id.*).

Through this lawsuit, Nunes brings one count of defamation against Defendants based on the following five statements from the Segment that he claims are false and defamatory:

> (1) "He [referring to President Donald Trump], at least, did condemn the attack on Paul Pelosi, as did House Republican Leader Kevin McCarthy, as did Senate Minority Leader Mitch McConnell."

> (2) "But you know what, far too many other Republicans and Conservative leaders are out there instead spreading, insane, offensive[,] and false conspiracy theories, such as the complete and utter lie, the deranged smear that Paul Pelosi and the attacker, the man who hit him in the head with a hammer, were in a sexual relationship."

> (3) "It's hard to fathom the kind of mind that hears of a tragedy, like what happened to 82-year-old Paul Pelosi, and decides to traffic in this filth. But sadly, Donald Trump Jr. is hardly alone. Former Republican Congressman and Chairman of the House Intelligence Committee, Devin Nunes, who

4

now runs Trump's social media company, Truth Social, shared this
Halloween image with the words 'at least this guy has his clothes on.'
Nunes also reposted this meme, using a poster for the gay romantic comedy
Bros, twisting it into a smear of Paul Pelosi. And, again, the man who tried
to bash Paul Pelosi's head in with a hammer. Words fail."

(4) "What is wrong with these people?"

(5) "In addition to being an inhuman and inhumane response to a tragedy,
it's a lie . . . Pelosi did not know the suspect."

(Compl., ¶ 1).

Defendants move this Court, pursuant to Federal Rules of Civil Procedure
12(b)(3) and 12(b)(6), to dismiss the Complaint for improper venue and failure to
state a claim or, alternatively, to transfer the case to the District of Columbia as a
proper venue, pursuant to 28 U.S.C. § 1406(a). Defendant Tapper also moves for a
dismissal of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(2),
for lack of personal jurisdiction. The Court agrees with Defendants that the case
should be dismissed for lack of personal jurisdiction over Tapper and for improper
venue.

## II. LEGAL STANDARDS

A plaintiff seeking to establish personal jurisdiction over a nonresident
defendant "bears the initial burden of alleging in the complaint sufficient facts to
make out a *prima facie* case of jurisdiction." *United Techs. Corp. v. Mazer*, 556
F.3d 1260, 1274 (11th Cir. 2009). When a defendant challenges personal

jurisdiction "by submitting affidavit evidence in support of [his] position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (citation omitted). In deciding a motion to dismiss for lack of personal jurisdiction, this Court must (1) first determine whether there is a statutory basis for exercising personal jurisdiction under the Florida long-arm statute, Fla. Stat. § 48.193, and then (2) decide whether exercising jurisdiction comports with due process. *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006). To satisfy due process, a plaintiff must establish that the defendant has "minimum contacts" with Florida such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted).

The Florida Supreme Court has held that "the federal due process analysis is not built into Florida's long-arm statute"; rather, the constitutional requirements are "more restrictive" than the state's long-arm statute. *See Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1207 (Fla. 2010). Accordingly, courts routinely dismiss claims for lack of jurisdiction based on a finding that the plaintiff failed to satisfy due process, even if the requirements of the long-arm statute are satisfied.

6

When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears

the burden of showing that the venue selected is proper. *Hemispherx Biopharma,*

*Inc. v. MidSouth Capital, Inc.*, 669 F. Supp. 2d 1353, 1356 (S.D. Fla. 2009). The

Court need not accept plaintiff's allegations as true if they are "contradicted by the

defendants' affidavits." *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268

(S.D. Fla. 2004). "When an allegation is challenged, the court may then examine

facts outside of the complaint to determine whether venue is proper." *Hemispherx,*

669 F. Supp. 2d at 1356. "[W]hether venue is 'wrong' or 'improper'—is generally

governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S.

49, 55–56 (2013). Venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants
> are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred . . . ; or
>
> (3) if there is no district in which an action may otherwise be brought
> as provided in this section, any judicial district in which any defendant
> is subject to the court's personal jurisdiction with respect to such
> action.

*Id.* § 1391(b). "When venue is challenged, the court must determine whether the

case falls within one of the three categories set out in § 1391(b)." *Atl. Marine*, 571

U.S at 561.

## III. DISCUSSION

### A. Lack of Personal Jurisdiction Over Tapper

Florida's long-arm statute does not reach Tapper, and exercising personal jurisdiction over him in Florida would not satisfy due process; therefore, this case is due to be dismissed as to Tapper. On the face of the Complaint, only one provision of the long-arm statute could possibly apply to Tapper. In relevant part, the statute provides that a person submits himself to the jurisdiction of Florida's courts by "[c]ommiting a tortious act within [Florida]." Fla. Stat. § 48.193(1)(a)(2). However, Nunes is a citizen and resident of California (Compl., ¶ 8), and Tapper is a citizen and resident of the Washington, D.C.. (Compl., ¶¶ 8, 10; Tapper Decl. ¶ 4).[2] Tapper is a Washington, D.C.-based television anchor and CNN's Chief Washington Correspondent. (Tapper Decl., ¶ 4). The Segment dealt with the reaction of prominent individuals to a violent attack on Pelosi, a California

---

[2] In response to the Tapper Declaration, which contains detailed factual averments supporting Defendants' assertions that none of the relevant conduct at issue in this litigation occurred within the state of Florida and that the exercise of personal jurisdiction over Tapper would violate due process, Nunes submitted a conclusory and bare-bones Declaration in support of his Opposition. (Doc. 33, pp. 28–29). Nunes' Declaration merely affirms that "the facts stated in [the] complaint and [Opposition] are truthful and accurate." (*Id.* at 29). Declarations that are devoid of specific facts are, however, legally insufficient. *See McCullough v. Royal Caribbean Cruises, Ltd.*, 268 F. Supp. 3d 1336, 1345 (S.D. Fla. 2017). Further, Nunes' Declaration is procedurally defective because, as stated earlier, it is neither signed nor dated by Nunes (in compliance with 28 U.S.C. § 1746). *See Ortiz v. Beverly Hills Spa & Salon LLC*, 2022 WL 6575727, at *2 (S.D Fla. Sept. 29, 2022) (declining to rely on a declaration that was neither signed nor dated). For these reasons, this Court will not consider the Nunes Declaration in its discussion of Defendants' Motions.

8

resident, in his California home. (Id., ¶¶ 9, 11–13).Tapper reported the Segment while in CNN's Washington, D.C. studio, where he generally reports from, and the Segment was produced by employees who work out of CNN's D.C. or New York City bureaus. (*Id.*). Nothing Tapper discussed in the Segment pertained specifically to Florida, and Tapper never traveled to Florida in relation to the Segment. (*Id.*). Nunes merely alleges he suffered harm in Florida because he works there. But, Tapper's commentary was not directed at the business of Truth Social or Nunes' work with the company. (*Id.*, ¶¶ 11, 13). Both Florida law and the U.S. Constitution, therefore, require that the claim against Tapper be dismissed pursuant to Rule 12(b)(2) for lack of personal jurisdiction—both general and specific.

General personal jurisdiction exists where a defendant's contacts with a state are "so 'continuous and systematic' as to render [them] at home in the forum state." *See, e.g., Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Ops., S.A. v Brown*, 485 U.S. 915, 919 (2011). As previously discussed, the Complaint fails to establish any contacts—much less continuous and systematic  contacts—with the state of Florida.

Specific jurisdiction, on the other hand, exists only when "the defendant has 'purposefully directed' his activities at residents of the forum" and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted). Courts within the Eleventh Circuit apply the following three-part test to determine whether specific jurisdiction comports with due process:

> 1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum;
>
> (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and
>
> (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Louis Vuitton*, 736 F.3d at 1355 (citations omitted). All three prongs of the test weigh against finding that this Court has personal jurisdiction over Tapper.

The first prong focuses on the "causal relationship between the defendant, the forum, and the litigation." *Louis Vuitton*, 736 F.3d at 1355–56. No such causal relationship exists here with respect to Tapper. Nunes merely alleges that CNN maintains contacts and general operations in Florida. (*See* Compl., ¶¶ 8–9). But, "jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him." *Keeton v. Hustler Magazine*, 465 U.S. 770, 781 n.13; *McFarlane v. Esquire Mag.*, 74 F.3d 1296, 1300 (D.C. Cir. 1996).

As for the second prong, Nunes cannot demonstrate that Tapper purposefully availed himself of conducting activities in Florida. This prong is satisfied "when

10

the tort was intentional, aimed at the forum state, and caused harm that the defendant should have anticipated would be suffered in the forum state." *Del Valle v. Trivago GMBH*, 56 F. 4th 1265, 2022 WL 17101160, at *5 (11th Cir. Nov. 22, 2022). There is simply no evidence that Tapper aimed the Segment at Florida, rather, the Segment was aimed at a national audience. (Chase Decl., Ex. 1; Ex. 2, pp. 3–4). The Segment was national via both CNN's telecast and digital circulation via the Internet. A media defendant's nationwide circulation of a publication is insufficient to confer personal jurisdiction over that defendant in every forum. *See Alternate Energy Corp. v. Redstone*, 328 F. Supp. 2d 1379, 1383 (S.D. Fla. 2004) ("the mere fact that allegedly libelous statements appeared in a publication sold to Florida residents is not sufficient to give a defendant fair warning that he may be haled into court here"); *see also Blankenship v. Napolitano*, 451 F. Supp. 3d 596, 622-23, 625-27 (S.D. W. Va. 2020) (dismissing anchors and on-air reporters for CNN, MSNBC, CNBC, and Fox News for lack of personal jurisdiction); *Corp. Trade, Inc. v. Golf Channel*, 2012 WL 13034166, at *3 (D.N.J. Oct. 11, 2012) ("Other courts facing similar facts have generally held that a nationwide broadcast that can be viewed in the forum state is not sufficient to establish personal jurisdiction.").

11

Accordingly, Nunes cannot "rely on [Defendants'] blanketed broadcasting" of the Segment nationwide to argue that Tapper purposefully directed his allegedly tortious activity into Florida. Nor can he rely on the mere posting of the Segment on the Internet as being sufficient to confer jurisdiction everywhere it is accessible. *See, e.g., Shrader v. Biddinger*, 633 F.3d 1235, 1245–46 (10th Cir. 2011) (no jurisdiction where Internet post's content and forum were "geographically-neutral" and targeted "at a nation-wide or world-wide audience"). Furthermore, the traditional minimum contacts test requires a court to ask whether the defendant's contacts with the forum state "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum." *See Louis Vuitton*, 736 F.3d at 1356. As previously discussed, Tapper has no substantial connection to the state of Florida as it pertains to this lawsuit or otherwise.

Finally, regarding the test's third prong, exercising jurisdiction over Tapper would "offend traditional conceptions of fair play and substantial justice." In making this determination, courts look to the following:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and the shared interest of the several States in furthering fundamental social policies.

*Burger King Corp.*, 471 U.S. at 477 (citation and internal quotation marks omitted). Florida has no interest in adjudicating this dispute. Nunes is not a Florida resident, and forcing Tapper, a Washington, D.C. resident, to litigate in Florida where he has no ties would impose a significant burden on him. Further, none of the witnesses involved in the production of the Segment are located in or around Florida. For all these reasons, it would violate due process for this Court to assert jurisdiction over Tapper, and this case must be dismissed as to Tapper.

### B. Improper Venue

This case is also due to be dismissed as to CNN for improper venue because Nunes cannot satisfy the requirements of 28 U.S.C. § 1391(b)(1)–(2), the two bases he claims for venue lying in the Middle District of Florida. 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3). Regarding § 1391(b)(1), Nunes does not allege—nor could he—that both CNN and Tapper reside in Florida, as is required by the statutory section. (*See* Compl., ¶ 10; Tapper Decl., ¶¶ 4–9). Nunes alleges that he "works in Sarasota County" (Compl., ¶ 13), but, for venue purposes, the fact that he works in Florida is irrelevant. The relevant question is whether all defendants reside in the state of Florida—Nunes' ties to Florida do not matter. *See,*

*e.g., Hemispherx,* 669 F. Supp. 2d at 1357 (venue improper in Southern District of Florida, where plaintiff registered and headquartered, observing plaintiff "focuses largely on its own activities and location, but the proper focus of the venue inquiry is on the relevant activities of the Defendants").

Turning to Section 1391(b)(2), which permits an action to be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred," it is [o]nly those acts which were, in and of themselves, 'wrongful' or had a 'close nexus' to the wrong [that] could form the basis of proper venue." *Forbes v. Lenox Fin. Mortg., LLC,* 2008 WL 2959727, at *3 (S.D. Fla. July 30, 2008) (quoting *Jenkins Brick Co. v. Bremer,* 321 F.3d 1366, 1372 (11th Cir. 2003)). Nunes alleges that the "defamation which is the basis of the lawsuit was committed in the Middle District of Florida *in addition to all over the world*" (Compl., ¶ 13 (emphasis added)), yet none of the events giving rise to the alleged defamation actually took place in Florida. Nothing Tapper discussed in the Segment specifically pertained to Florida and Tapper never traveled to Florida in relation to the Segment. (Decl. of Jake Tapper, 9, 11–12). The only connection to Florida is Plaintiff's alleged employment in Sarasota County. (Compl., ¶ 8).

The venue statute "protect[s] defendants" and thus "require[s] courts to focus on relevant activities of the defendant, not of the plaintiff." *Jenkins Brick,*

14

321 F.3d at 1371-72; *Hemispherx*, 669 F. Supp. 2d at 1356-57 (same);

*Montgomery v. Risen*, 2016 WL 4119865, at *2 (S.D. Fla. Jan. 26, 2016) (venue

improper where defendant's newsgathering related to challenged statements

occurred in Washington, D.C., not Florida). Here, CNN and Tapper did nothing

relevant to this action in Florida. Both CNN and Tapper are residents of

Washington, D.C. for purposes of the venue statute. For these reasons, this case is

due to be dismissed for improper venue.

     **ACCORDINGLY**, it is **ORDERED AND ADJUDGED**:

     1. Defendant Cable News Network's Motion to Dismiss Complaint Pursuant

to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) is **GRANTED**. This

case is dismissed as to Defendant CNN.

     2. Defendant Jake Tapper's Motion to Dismiss Complaint Pursuant to

Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) is **GRANTED**.

This case is dismissed as to Defendant Tapper.

     3. Defendants' Request for Oral Argument (Doc. 29) is **DENIED AS

MOOT**.

4. The Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 1st day of March, 2023.

Susan C. Bucklew

SUSAN C. BUCKLEW
United States District Judge

16